**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

ROBERT J. MARSDEN,
        Appellant,

      v.

ENVIRONMENTAL PROTECTION
   AGENCY,
        Agency.

DOCKET NUMBER
DE-1221-14-0298-W-3

DATE: February 13, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Lauren M. Drabic, Esquire, and Robert C. Seldon, Esquire, Washington,
   D.C., for the appellant.

Edward O. Sweeney, Washington, D.C., for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## FINAL ORDER

The appellant has filed a petition for review and the agency has filed a cross petition for review of the initial decision, which denied the appellant's request for corrective action in this individual right of action (IRA) appeal. Generally, we grant petitions such as these only in the following circumstances:

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that neither party has established any basis under section 1201.115 for granting the petition or cross petition for review. Therefore, we DENY the petition for review and the cross petition for review. Except as expressly MODIFIED by this Final Order to clarify and supplement the analysis of the agency's affirmative defense, we AFFIRM the initial decision.

## BACKGROUND

The appellant was a GS-13 Special Agent for the agency. *Marsden v. Environmental Protection Agency*, MSPB Docket No. DE-1221-14-0298-W-1, Initial Appeal File (IAF), Tab 1 at 1. His permanent duty station was the Denver Area Office, but during the relevant time period, the appellant was on temporary assignment in Montana. Hearing Transcript (Tr.), Day 2 at 33, 35, 39-40 (testimony of the appellant). The appellant's supervisory chain was as follows: (1) the Denver Special Agent in Charge (SAC); (2) the Criminal Investigation Division (CID) Deputy Director; (3) the CID Director; and (4) the Director of the Office of Criminal Enforcement, Forensics, and Training (OCEFT). Tr., Day 1 at 60, 75 (testimony of the appellant); Tr. Day 2 at 23 (testimony of the Denver SAC).

Between July 6 and September 1, 2010, the appellant made several disclosures, stating that CID Director H had violated longstanding agency policy by allowing two married agents in Montana to work under the same supervisor. *Marsden v. Environmental Protection Agency,* MSPB Docket No. DE-1221-14-0298-W-3, Appeal File (W3-AF), Tab 14 at 51, 55; Tr., Day 1 at 53-57, 62-66, 75-77 (testimony of the appellant). The appellant made these disclosures to the Denver SAC, the CID Deputy Director, the OCEFT Director, and the CID Director herself. Tr., Day 1 at 53-57, 62-66, 75-77 (testimony of the appellant).

In or around early September 2010, the agency announced GS-14 Assistant Special Agent in Charge (ASAC) vacancies in Denver, Colorado, Seattle, Washington, and Kansas City, Missouri. Tr., Day 2 at 47-48 (testimony of the Denver SAC). The appellant applied for both the Seattle and Denver positions, although he was really only interested in Denver. W-3 AF, Tab 14 at 77-99.[2] From September 20 through 22, 2010, a five-member panel conducted interviews.[3] *Id.* at 112-14. The interview panel rated the top three candidates in the following order— (1) ASAC M, (2) the appellant, and (3) ASAC O. *Id.* at 114. On September 23, 2023, the panel unanimously recommended that ASAC M be selected for Denver and the appellant be selected for Seattle. *Id.* No candidate was recommended for Kansas City because the Kansas City SAC decided that he did not want to fill the position at that time. W-3 AF, Tab 14 at 114.; Tr., Day 2 at 48-49. Therefore, the third-ranking candidate, ASAC O, was not recommended for any position. The panel forwarded its recommendation to the CID Director, and she discussed the recommendation with the OCEFT

---

[2] According to the appellant, both the CID and OCEFT Directors told him that he should apply for positions outside of Denver, and particularly recommended that he apply for the opening in Seattle. Tr., Day 1 at 77, 84, 181-82 (testimony of the appellant); Tr., Day 2 at 139 (testimony of the OCEFT Director). Nevertheless, the appellant testified that the individuals involved in the selection were all aware that he would prefer the Denver job. Tr., Day 1 at 116, 181 (testimony of the appellant).

[3] The interview panel was comprised of SACs and ASACs from various offices. The Denver SAC was chair of the panel. W-3 AF, Tab 14 at 113-14.

Director, who was the selecting official. Tr., Day 2 at 92-97 (testimony of the CID Director), 136 (testimony of the OCEFT Director).

Despite the panel's recommendation, neither the CID Director nor the OCEFT Director wanted to reassign ASAC M to Denver because the agency had just recently assigned him to Chicago, and his departure from that office would have been expensive and disruptive. *Id*. at 92-98 (testimony of the CID Director), 136-38 (testimony of the OCFET Director). Therefore, the remaining top two candidates were the appellant and ASAC O. After considering the matter and discussing it with the CID Director, the OCEFT Director decided to assign the appellant to Seattle and ASAC O to Denver. *Id*. at 103-04 (testimony of the CID Director).

The CID Director notified the Denver SAC of this determination. *Id*. at 58-59 (testimony of the Denver SAC), 101 (testimony of the CID Director). The Denver SAC adamantly objected to working with ASAC O. She stated that, with ASAC M out of the picture, her next choice for Denver ASAC would be the appellant. *Id*. at 60-62, 66 (testimony of the Denver SAC), 101 (testimony of the CID Director). The CID Director told the Denver SAC that she would have the opportunity to express her reservations to the OCEFT Director that afternoon, before he finalized his decision. *Id*. at 63 (testimony of the Denver SAC), 101-02 (testimony of the CID Director). However, 45 minutes later, the Denver SAC received a telephone call from agency headquarters, notifying her that the OCEFT Director had already made his final decision and had selected the appellant for Seattle and ASAC O for Denver. Tr., Day 2 at 63-64 (testimony of the Denver SAC); *see* W-3 AF, Tab 14 at 115-16.

The appellant filed a complaint with the Office of Special Counsel (OSC), raising several claims of whistleblower retaliation. IAF, Tab 7 at 4-19. Among other things, he alleged that the ASAC selection decision was in retaliation for

his disclosing violations of the agency's relatives policy.[4]  IAF, Tab 7 at 4-19. OSC closed the complaint without taking corrective action, and the appellant filed an IRA appeal.  IAF, Tab 1, Tab 12 at 26.

After a hearing, the administrative judge issued an initial decision denying the appellant's request for corrective action.  W3-AF, Tab 31, Initial Decision (ID).  The administrative judge found that the appellant proved that he made a protected disclosure that was a contributing factor in the agency's selection decision.  ID at 5-7.  Nevertheless, he found that the agency proved by clear and convincing evidence that it would have taken the same action even in the absence of the appellant's disclosure.  ID at 7-9.

The appellant has filed a petition for review, disputing the administrative judge's analysis of the agency's affirmative defense.  Petition for Review (PFR) File, Tab 4.  The agency has filed a response in opposition to the appellant's petition for review, as well as a cross petition for review challenging the administrative judge's analysis of the appellant's case in chief.  PFR File, Tab 6. The appellant has filed a response to the agency's cross petition for review.  PFR File, Tab 10.

## ANALYSIS

To prevail in an IRA appeal before the Board, an appellant must establish a prima facie case of whistleblower retaliation by proving by preponderant evidence that he made a protected disclosure that was a contributing factor in a personnel action taken against him.[5]  5 U.S.C. § 1221(e)(1) (2011); *Scoggins v.*

---

[4] Although the appellant's OSC complaint raised multiple distinct claims, the instant appeal concerns only the ASAC selection decision.  W-3 AF, Tab 24 at 2.

[5] The initial decision refers to the Whistleblower Protection Enhancement Act of 2012 (WPEA), Pub. L. No. 112–199, 126 Stat. 1465.  ID at 5.  With exceptions not pertinent to this IRA appeal, because the events at issue all occurred before its December 27, 2012 enactment, the WPEA does not apply.  *See, e.g.*, *Miller v. Federal Deposit Insurance Corporation*, 122 M.S.P.R. 3, ¶ 15, n.5 (2014), *aff'd*, 626 F. App'x 261 (Fed. Cir. 2015).  Nevertheless, we find that the statutory amendments of the WPEA would be immaterial to the dispositive issues in this appeal.  *See Panter v. Department of the Air*

*Department of the Army*, 123 M.S.P.R. 592, ¶ 21 (2016). If the appellant meets that burden, then the Board shall order such corrective action as it considers appropriate unless the agency shows by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected disclosure. 5 U.S.C. § 1221(e)(1)-(2) (2011); *Scoggins*, 123 M.S.P.R. 592, ¶ 26. In determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing, the Board will consider all of the relevant evidence, including the following factors: the strength of the agency's evidence in support of its action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999); *Parikh v. Department of Veterans Affairs*, 116 M.S.P.R. 197, ¶ 36 (2011).

The appellant made a protected disclosure that was a contributing factor in the agency's decision not to select him for the Denver ASAC position.

As noted above, the agency filed a cross petition for review challenging the administrative judge's finding that the appellant established his prima facie case of reprisal for protected whistleblowing activity. PFR File, Tab 6 at 5-9. A protected disclosure for purposes of whistleblowing is one that the appellant reasonably believed evidenced gross mismanagement, a gross waste of funds, an abuse of authority, a substantial and specific danger to public health or safety, or any violation of law, rule, or regulation. 5 U.S.C. § 2302(b)(8)(A) (2011); *Scoggins*, 123 M.S.P.R. 592, ¶ 11. A reasonable belief exists if a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant could reasonably conclude that the actions of the Government

_____

*Force*, 22 M.S.P.R. 281, 282 (1984).

evidence one of the categories of wrongdoing listed in section 2302(b)(8)(A). *Scoggins*, 123 M.S.P.R. 592, ¶ 11.

We agree with the administrative judge that the appellant disclosed a violation of the agency's rule proscribing employees married to each other from working for the same first-level supervisor. ID at 3, 5; IAF, Tab 14 at 87-90. Moreover, for the following reasons, we are not persuaded by the agency's argument that the appellant lacked a reasonable belief that he was disclosing a violation of the rule because the violation, which it contends was widely known, had been remedied at the time of his disclosure. PFR File, Tab 6 at 6. The agency argues on review that the violation, i.e., married employees serving under the same first-line supervisor, had been cured a year and a half before the appellant made his alleged disclosure, leaving him "nothing to blow the whistle about." PFR File, Tab 6 at 5. It argues that under the administrative judge's rubric an employee could make a protected disclosure "by 'disclosing' any rule violation that ever occurred in the history of the agency." *Id.* at 6.

The administrative judge found that, even though the violation itself had ceased and it was widely known that the couple in question worked for the same supervisor, the fact that it violated agency policy was not widely known, and the violation had occurred recently enough that it was reasonable for the appellant to disclose it. ID at 6. We agree. Regardless of whether the violation had ceased, its occurrence is not in dispute. Moreover, the statute makes it a prohibited personnel practice to take or fail to take a personnel action because of "any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences—(i) a violation of any law, rule, or regulation." 5 U.S.C. § 2302(b)(8)(A)(i) (2011). It does not require that the violation be ongoing nor does it explicitly exclude violations that have ceased. *Id.* Therefore, we find that the agency's arguments provide no basis to disturb the administrative judge's findings in this regard.

The administrative judge also correctly found that the appellant's disclosure was a contributing factor in the personnel action at issue—the decision not to select him for the Denver ASAC position. ID at 6-7; *see* 5 U.S.C. § 2302(a)(2)(A)(ii) (2011) (defining "personnel action" to include "promotion"). The record reflects that the selection was made no later than 4 months after the relevant officials learned of the appellant's disclosure, a temporal proximity sufficient to satisfy the knowledge/timing test. ID at 7; Tr., Day 2 at 131-33 (testimony of the OCEFT Director); *see, e.g.*, *Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 17 (2014) (finding that an interval of approximately 4 months was sufficient to satisfy the timing prong of the knowledge/timing test). Thus, we agree with the administrative judge that the appellant made a protected disclosure that was a contributing factor in the agency's selection decision, and we deny the agency's cross petition for review.

<u>The agency established by clear and convincing evidence that it would have made the same selection absent the appellant's protected disclosures.</u>

We now consider the three *Carr* factors, set forth above, to determine whether the agency established by clear and convincing evidence that it would have made the same decision absent the appellant's disclosure. *See Carr*, 185 F.3d at 1323. The Board does not view the *Carr* factors as discrete elements, each of which the agency must prove by clear and convincing evidence, but rather weighs the factors together to determine whether the evidence is clear and convincing as a whole. *E.g.*, *Mithen v. Department of Veterans Affairs*, 122 M.S.P.R. 489, ¶ 36 (2015), *aff'd*, 652 F. App'x 971 (Fed. Cir. 2016) (Table). Crucial to this analysis, the Board must consider all of the evidence, including that which fairly detracts from the conclusion that the agency met its burden. *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).

*The agency's evidence in support of its decision*

The first *Carr* factor concerns the strength of the agency's evidence in support of its decision. *Carr*, 185 F.3d at 1323. The administrative judge found that, although the relevant officials knew of the appellant's history and connections to Denver, they offered credible reasons for placing him in Seattle instead. ID at 7. Specifically, the interview panelists, none of whom the appellant alleges were retaliating against him, unanimously recommended him for the Seattle position. W-3 AF, Tab 14 at 113-14. We agree with the administrative judge that this unequivocal recommendation from an impartial panel lends strong support to the OCEFT Director's ultimate decision. ID at 7. Furthermore, the administrative judge accurately recounted the deciding official's testimony as to why he agreed with the recommendation. ID at 7-8. Specifically, the OCEFT Director testified that he was concerned about the quality of training and supervision available at the Denver office, so he preferred to fill the position there with an individual who already had prior ASAC experience. Tr., Day 2 at 141-42 (testimony of the OCEFT Director). More specifically, the OCEFT Director testified that the Denver position was not going to provide the selectee much experience in "field work, . . . case management, . . . interaction with agents, [or] interaction with the region," but this was going to be less of a problem for ASAC O, who already had extensive experience in these areas. *Id.* at 144-45, 149 (testimony of the OCEFT Director). Conversely, the OCEFT Director testified that the appellant, who lacked prior experience as an ASAC, would have a better developmental opportunity in Seattle. *Id.* at 155 (testimony of the OCEFT Director). Finally, The OCEFT Director testified that he "knew there had been friction between" the appellant and the Denver SAC in the past, and he was concerned that this would not be a good environment for a new ASAC to step into.[6] *Id.* at 156 (testimony of the OCEFT Director).

---

[6] The existence of this "friction" between the appellant and the Denver SAC is corroborated by other testimony. Tr., Day 2 at 34, 68-75 (testimony of the Denver

There is other evidence, however, that detracts from the agency's position. Specifically, the appellant testified that he would have needed minimal job training to take on the ASAC role, particularly in the Denver office, because he had already been performing "a lot of the same duties" while he was Resident Agent in Charge in Helena, Montana. Tr., Day 1 at 88-89 (testimony of the appellant). The CID Acting Director corroborated the appellant's testimony. He stated that there was no reason that the appellant could not have transitioned smoothly into the Denver ASAC role. *Id.* at 116 (testimony of the CID Acting Director). In fact, he testified that the appellant was in a better position to take on the role than ASAC O because the appellant was already familiar with the Denver region and had established relationships there. *Id.* at 116-17 (testimony of the CID Acting Director). Moreover, unlike the situation with ASAC O, the agency would not have had to pay for the appellant to relocate for the Denver position. *Id.* at 117-18 (testimony of the CID Acting Director). The appellant also gave a different account of his relationship with the Denver SAC. He testified that there were no issues between them that would have prevented him from serving as her ASAC. *Id.* at 182 (testimony of the appellant). He also testified that whatever friction there was stemmed from the Denver SAC's failure to keep his initial disclosure to her in confidence; he did not mention any of the previous professional disagreements that the Denver SAC cited in her testimony. Tr., Day 1 at 68-69, 182 (testimony of the appellant); Tr., Day 2 at 34, 68-75 (testimony of the Denver SAC). Finally, the record shows that, contrary to the OCEFT Director's stated expectations, ASAC O's appointment to Denver did not work out; he was unable to maintain a productive working relationship with the Denver SAC, and so the agency reassigned him to Seattle a mere 9 months after his appointment. W-3 AF, Tab 14 at 144; Tr., Day 1 at 123-25 (testimony of the CID Acting Director).

---

SAC), 172 (testimony of the Seattle SAC).

Having considered this evidence as a whole, we find no basis to disturb the administrative judge's overall assessment of the strength of the agency's evidence. Both the CID Acting Director and the OCEFT Director offered reasonable explanations for their points of view, and it appears that the difference between them comes down to professional disagreement. That the CID Acting Director had a different reasonable opinion than did the OCEFT Director does not seriously undermine the agency's case. This is especially so considering that the OCEFT Director's ultimate decision regarding the appellant was consistent with the interview panel's recommendation. Furthermore, although the OCEFT Director's decision to deviate from the panel recommendation with respect to Denver did not work out, it does not follow that the correct course of action would have been to deviate from the Seattle recommendation as well by placing the appellant in Denver.[7] The record shows that, when ASAC O left Denver in July 2011, the agency filled the position with ASAC M, consistent with the panel's original recommendation. W-3 AF, Tab 14 at 144. This decision was also consistent with the OCEFT Director's stated opinion that the Denver position should be filled with an experienced ASAC.

On petition for review, the appellant argues that the agency's evidence in support of its ASAC selection decisions was not strong. Specifically, he argues that the OCEFT Director failed to account for the Denver SAC's preference for the appellant over ASAC O. PFR File, Tab 4 at 14. The appellant's theory of the case is that the CID Director retaliated against him by withholding this information from the OCEFT Director until it was too late and the selection decision had already been made. *Id.* at 9, 12-15. Although the CID Director was

---

[7] On petition for review, the appellant seeks to reopen discovery, arguing that the agency should have but failed to provide a memorandum concerning the poor working relationship between the Denver SAC and ASAC O, which memorandum may also contain information pertinent to the CID Director's motive to retaliate. PFR File, Tab 4 at 17-19. Based on the appellant's description of the information sought, we find that it would be immaterial to the outcome of the appeal, and we therefore deny the request. *See Russell v. Equal Employment Opportunity Commission*, 110 M.S.P.R. 557, ¶ 15 (2009).

not the selecting official, we agree with the appellant that she was involved in the selection process, and that retaliation through her might be shown under a cat's paw theory. *See generally Karnes v. Department of Justice*, 2023 MSPB 12, ¶ 19. However, the facts of this case do not support such a finding; only 45 minutes elapsed between the time that the CID Director learned of the Denver SAC's opinion and the time that the Denver SAC learned of the selection decision. W-3 AF, Tab 30 at 12; Tr., Day 2 at 63-64 (testimony of the Denver SAC). This is not a sufficient span of time to support a conclusion that the CID Director "withheld" the information from the OCEFT Director.[8] This is especially so considering that the Denver SAC had planned to speak with the OCEFT Director that very afternoon. Tr., Day 2 at 60, 63 (testimony of the Denver SAC). It is likely that the OCEFT Director had already taken the selection action before the conversation between the CID Director and the Denver SAC even occurred, but in either case, the record shows that the final selection decision came out earlier than either of these officials had expected.

*Motive to retaliate*

Contrary to the administrative judge's findings on the second *Carr* factor, in which he discounted the CID Director's motive to retaliate against the appellant, ID at 9, we agree with the appellant that, because she was the subject

---

[8] The administrative judge credited the OCEFT Director's testimony that, even if he had known of the Denver SAC's opposition to ASAC O, it would have influenced his decision only "minimally." ID at 8-9; Tr., Day 2 at 153; (testimony of the OCEFT Director). However, particularly in light of the clear and convincing evidence standard, we find the evidence on this point equivocal at best. The fact remains that the OCEFT Director would have at least considered the Denver SAC's opinion in making his selection, Tr., Day 2 at 153-54 (testimony of the OCEFT Director), just as he considered and deferred to the Kansas City SAC's preference not to fill the Kansas City ASAC position at all. On the other hand, the OCEFT Director would have had to weigh against that consideration the Seattle SAC's desire to have the appellant in his own office. Tr., Day 2 at 170-71 (testimony of the Seattle SAC). In any event, this counterfactual scenario is far less significant in the analysis than the undisputed fact that the OCEFT Director did not know of the Denver SAC's preference, and the lack of evidence that this was caused by the intentional withholding of information.

of his protected whistleblowing disclosure, the CID Director had a significant motive to retaliate against him, PFR File, Tab 4 at 8-9. *See Smith v. General Services Administration*, 930 F.3d 1359, 1366-67 (Fed. Cir. 2019) (outlining that, when analyzing the second *Carr* factor, the Board should have considered, amongst other things, that the disclosures "embarrassed" the management officials implicated). However, as explained above, regardless of the CID Director's motive, and, even if she really thought that by withholding the information she could disadvantage the appellant, the chronology shows that this did not and perhaps could not have happened. We have also considered that the CID Director influenced the selection process prior to her conversation with the Denver SAC when she discussed the panel recommendation with the OCEFT Director. Tr., Day 2 at 95-100 (testimony of the CID Director). However, there is no evidence that any suggestions or recommendations that she made during these discussions could be considered retaliatory against the appellant.

As for the OCEFT Director himself, we find that a retaliatory motive could be imputed towards him to the extent that he was a senior official and representative of the institutional interests of the agency. *See Chambers v. Department of the Interior*, 116 M.S.P.R. 17, ¶¶ 3, 69, 71 (2011). However, the administrative judge found that, if the OCEFT Director had any retaliatory motive, it was only slight. ID at 9. The appellant does not challenge this finding on review, and we find no reason to disturb it.

*The agency's treatment of similarly situated individuals*

The third *Carr* factor concerns evidence that the agency takes similar actions against employees who are not whistleblowers but are otherwise similarly situated. The agency identified ASAC O as a similarly situated non-whistleblower whom it treated similarly to the appellant. Specifically, ASAC O would have preferred the Seattle position, but the agency selected him for the Denver position instead. W-3 AF, Tab 19 at 12-13; IAF, Tab 15 at 16, 64.

The agency argues that neither the appellant nor ASAC O got the position that they preferred; in each case the deciding official made his decision based on what he believed were the best interests of the agency regardless of the candidates' personal preferences. W-3 AF, Tab 119 at 12-13. In that regard, we note that the OCEFT Director encouraged both candidates to apply for the other position, which they did. W-3 AF, Tab 14 at 121; Tr., Day 1 at 84 (testimony of the appellant). We further observe that ASAC M, the highest scoring candidate, was also not selected for the position that he wanted because the OCEFT Director decided that the agency's interests would be better served if he remained in Chicago. Tr., Day 2 at 92-98 (testimony of the CID Director), 136-38 (testimony of the OCEFT Director). We acknowledge the possibility that the agency treated the appellant and ASAC O similarly merely because doing so would disadvantage the appellant. Nevertheless, on balance, we find that the agency's evidence tends to show that it has taken similar actions with respect to similarly situated non-whistleblowers.

The appellant counters with evidence that the agency has used geographical reassignment to retaliate against two other agency employees for their protected activity.[9] PFR File, Tab 4 at 15-17. The first of these individuals was a Special Agent in Baltimore, Maryland, who disclosed violations of the Family and

---

[9] We recognize that this evidence does not fit within the literal parameters of the third *Carr* factor, which concerns the agency's treatment of similarly situated non-whistleblowers. *See Rickel v. Department of the Navy*, 31 F.4th 1358, 1363 (Fed. Cir. 2022). Nevertheless, we observe that the *Carr* factors were originally formulated by a Merit Systems Protection Board administrative judge to address the facts of a specific case. *Rychen v. Department of the Army*, 51 M.S.P.R. 179, 184-85 (1991). The Board and the U.S. Court of Appeals for the Federal Circuit subsequently recognized that these factors have broad applicability to whistleblower claims and have employed them as a useful analytical framework for a wide variety of fact patterns. *E.g., Carr*, 185 F.3d at 1323. Much like the penalty factors in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981), the *Carr* factors are not intended to be an exhaustive list, and *Carr* should not be read to preclude the Board from considering other relevant evidence that does not fit neatly within the rubric. *See Rickel*, 31 F.4th 1358 at 1364 ("In determining whether the agency has carried its burden, the Board considers the three nonexclusive *Carr* factors."). Conversely, not every *Carr* factor will necessarily be relevant in every particular case. *See id.* at 1365-66.

Medical Leave Act of 1993, threatened to file a grievance about the matter, and was subsequently reassigned, involuntarily, to Seattle. W-3 AF, Tab 16 at 19-23. The CID Director was one of the officials who concurred in the reassignment. W-3 AF, Tab 16 at 8; Tr., Day 2 at 84 (testimony of the CID Director). The affected Special Agent filed a complaint with OSC, which found that the reassignment was retaliatory, in violation of the Whistleblower Protection Act. W-3 AF, Tab 16 at 18-31. We have reviewed this evidence, which the agency does not dispute, and we find that it shows that, in 2010, the SAC in Philadelphia, Pennsylvania engaged in whistleblower retaliation against this Special Agent. However, having carefully reviewed OSC's report and the other relevant documents, we find no evidence that the CID Director herself acted with retaliatory animus in that case. Rather, it appears that she and various other officials approved the Philadelphia SAC's reassignment request based on the facially legitimate but pretextual reasons that she was given. W-3 AF, Tab 16 at 4-8. In other words, in that case, it was the CID Director who was the cat's paw.

The second employee was ASAC B, who filed an equal employment opportunity (EEO) complaint after she was not selected for a promotion to the position of SAC in Dallas, Texas. She named the CID Director as the discriminating official. Tr., Day 2 at 10 (testimony of ASAC B). The following month, the CID Director placed ASAC B on a performance improvement plan, and ASAC B filed another EEO complaint about that action. *Id*. at 11 (testimony of ASAC B). Approximately 5 months later, the CID Director proposed ASAC B's removal for lack of candor. W3-AF, Tab 15 at 72-75. The OCEFT Director was the deciding official, and he did not sustain the charge. *Id*. at 76. Nevertheless, he involuntarily reassigned ASAC B to agency headquarters in Washington, D.C. Tr., Day 2 at 18-19 (testimony of ASAC B). Rather than report to duty in Washington, D.C., ASAC B agreed with the agency that she would retire. W-3 AF, Tab 15 at 79; Tr., Day 2 at 19-20 (testimony of ASAC B).

Although this series of events may raise an inference of retaliation, in the absence of a judgment from a tribunal of competent jurisdiction, it is impossible for us to determine in the context of this IRA appeal whether retaliation in ASAC B's case actually occurred. The appellant argues on review that ASAC B filed a lawsuit in Federal district court, which the agency settled almost immediately. PFR File, Tab 4 at16; Tr., Day 2 at 20-21 (testimony of ASAC B). However, for reasons that the Board has previously explained, we will not consider evidence of a settlement or settlement negotiations in determining the existence or extent of liability. *See Hayden v. U.S. Postal Service*, 15 M.S.P.R. 296, 302 (1983), *aff'd*, 758 668 (Fed. Cir. 1984) (Table). We therefore find that ASAC B's case is not competent evidence on whether the agency would have taken the same action in the appellant's case notwithstanding his protected whistleblowing.

The appellant also cites to an October 19, 2010 memorandum concerning OCEFT and CID leadership. W-3 AF, Tab 17 at 4-8, Tab 30 at 17. He argues that this memorandum shows that the agency, and the CID Director in particular, have used involuntary reassignments as a tool of retaliation in other cases. W-3 AF, Tab 30 at 17. We have reviewed this memorandum, but we do not agree with the appellant's argument. The memorandum seems to show that numerous CID and other OCEFT employees were unhappy with the climate in OCEFT and felt that some personnel matters were being handled unfairly. W-3 AF, Tab 17 at 4-8. However, nowhere in this document are the CID or OCEFT Directors implicated personally, and there is no discussion of any sort of prohibited personnel practice. In any event, we find that this vague, unsworn, triple-hearsay document does not constitute probative evidence of whether the agency committed a prohibited personnel practice in this case. *See Cooper v. United States*, 639 F.2d 727, 730, 226 Ct. Cl. 75 (1980) (finding triple hearsay to be "highly unreliable").

Considering all of the evidence described above, we find that the agency has shown by clear and convincing evidence that the OCEFT Director would have made the same decisions even absent the appellant's protected disclosures. The

OCEFT Director's stated reasons for making his decision are supported by and consistent with the other evidence of record. There is little evidence of retaliatory motive by the OCEFT Director, and there is no evidence to show that, when he made his decision to promote the appellant to an ASAC position in Seattle (a position for which the appellant had applied), he was even aware that this would have been an undesirable outcome for the appellant. Although the CID Director had significant retaliatory motive, the record shows that she did not actually influence the ASAC selection decision in any way that she believed would be disadvantageous to the appellant.

## NOTICE OF APPEAL RIGHTS[10]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions

---

[10] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain

judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[11]  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

---

[11] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                    _____
                                  Gina K. Grippando
                                  Clerk of the Board

Washington, D.C.