# United States Court of Appeals for the Federal Circuit

---

**DAVID A. RICKEL,**
*Petitioner*

**v.**

**DEPARTMENT OF THE NAVY,**
*Respondent*

---

2020-2147

---

Petition for review of the Merit Systems Protection Board in No. AT-1221-19-0576-W-1.

---

Decided: April 18, 2022

---

DONALD E. PINAUD, JR., Law Office of Don Pinaud, All Florida Justice, LLC, Jacksonville, FL, argued for petitioner.

ALISON VICKS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by BRIAN M. BOYNTON, ALLISON KIDD-MILLER, ROBERT EDWARD KIRSCHMAN, JR.

---

Before LOURIE, HUGHES, and CUNNINGHAM, *Circuit Judges.*

HUGHES, *Circuit Judge*.

David A. Rickel appeals a decision of the Merit Systems Protection Board finding that the Department of the Navy had proven by clear and convincing evidence that it would have removed Mr. Rickel even absent his protected whistleblowing activity. Because substantial evidence supports the Board's conclusion that the agency met its clear and convincing burden, we affirm.

I

A

Mr. Rickel was a Fire Protection Specialist with the First Coast Navy Fire and Emergency Services (Fire Services) at Naval Air Station Jacksonville. In 2014, the Department of Navy appointed him—in his role as Fire Protection Specialist—to Assistant Chief of Training. In this position, Mr. Rickel was responsible for determining training requirements for the department, reviewing training records and charts, and ensuring that the Fire Services firefighters' certifications were maintained and current. He was the only Fire Services employee assigned to the Fire Services training department.

In late 2016, Mr. Rickel applied for the department's open Deputy Fire Chief position. Fire Chief Mark Brusoe ultimately selected James Gray, an Assistant Chief of Operations with the Fire Services. The agency promoted Mr. Gray to Deputy Fire Chief. In an email sent to Chief Brusoe, Mr. Rickel questioned the promotion and Mr. Gray's candor in his application, requesting information about the selection process and "feedback concerning his questions from the Executive Officers and from HR personnel 'so that [he] may be a better competitor in the future.'" Appx8. He also "alleg[ed] that at least 5 unidentified candidates had been promoted to 'upper level positions' who lacked either credentials or other stated requirements" and "that unidentified lower level employees had

failed to meet the minimum standards required for their positions," requesting that "a minimum requirement review be conducted by a neutral third party" because "such appointments pose[] a 'life safety risk' to the Navy, its service members and their families," and others. Appx8.

In April 2017, Deputy Chief Gray emailed Mr. Rickel explaining that the department had taken a "big hit" on training during the last inspection and suggesting that the department begin addressing the concerns about its training program by getting the training records "up to speed." Appx10. Deputy Chief Gray shared a "Self Inspection List"—which listed the minimum requirements for the training records—and directed Mr. Rickel "to proceed as he saw fit." Appx10. In an email responding to Deputy Chief Gray, Mr. Rickel tried to shift past and future responsibility away from himself by: questioning Deputy Chief Gray's authority as his supervisor; asserting that Chief Brusoe, who was listed as his supervisor, had already discussed those items with him; claiming that his position as Assistant Chief of Training required him to review records, not maintain them; disclaiming responsibility for the inspection "hits" to their training program and blaming such hits on supervisors' failures; and contending that no inspector had spoken with Mr. Rickel or asked him about the training program. Appx10. Chief Brusoe informed Mr. Rickel that Deputy Chief Gray was his first-level supervisor and that Mr. Rickel's position description would be corrected to reflect that.

On June 15, 2017, Deputy Chief Gray instructed Mr. Rickel to update the training records by July 15. In doing so, Deputy Chief Gray provided Mr. Rickel with supporting documentation to assure Mr. Rickel that such a task was within his duties and job description as Assistant Chief of Training. Mr. Rickel responded that the task was outside the scope of his position. Still, he informed Deputy Chief Gray that he would comply with the directive. About a month and a half after his initial request, and about three

weeks after the due date, Deputy Chief Gray requested a progress update on August 3 and, having not received a response, again on August 7, 2017. In response, Mr. Rickel reiterated his disagreement that his job description encompassed maintenance of the training records and requested a meeting with Deputy Chief Gray in the presence of a union representative. Three days later, on August 10, Captain Michael Connor, the Executive Officer of Naval Air Station Jacksonville at the time,[1] confirmed that the task was within Mr. Rickel's duties and responsibilities.

After discovering that the records were "all outdated," Chief Brusoe directed Mr. Rickel, in December 2018, to fix the training records. Appx33–34. He "noted that there were records for personnel that had 'left years ago,'" provided instructions on specific updates that were needed, and directed Mr. Rickel to complete the task by January 1, 2019. Appx34. Deputy Chief Gray requested a progress update from Mr. Rickel on January 25, 2019, over three weeks after the initial due date, reminding Mr. Rickel that the inspection team was due for a visit soon and that the department wanted to avoid "a hit on something we can have done before they get here." Appx34. Receiving no response, Deputy Chief Gray emailed Mr. Rickel on January 31, asking for a status report by close of business that day. The next day, Mr. Rickel informed Deputy Chief Gray that he had not completed the task.

During Mr. Rickel's mid-year performance review on February 13, 2019, Deputy Chief Gray pointed out that Mr. Rickel had not completed certification packets and informed him that personnel were concerned about having to repeat classes or packages. Deputy Chief Gray reminded

---

[1]    Captain Brian Weiss replaced Captain Michael Connor as the Executive Offer of Naval Air Station Jacksonville, and Captain Weiss was the deciding official in Mr. Rickel's case.

him that this was part of his job description; it was his responsibility to monitor progress and to keep personnel informed of their respective training timelines so that they would not have to repeat a course. Mr. Rickel continued to disagree.

Despite instructions from Chief Brusoe and Deputy Chief Gray to update the training records, as of March 5, 2019, Mr. Rickel still had not completed the task. Deputy Chief Gray informed him that he was taking the task away from him and assigning it to himself. Deputy Chief Gray documented, in a memorandum, the steps he took between March 5 and March 25 to update the records, noting that it only took about 16.5 hours to "get the folders done and inspection ready" and that he had updated the training records "in addition to performing [his] duties as the Deputy Chief." Appx37.

Following this series of events, Chief Brusoe proposed to remove Mr. Rickel from federal service for failure to follow instructions. On June 7, 2019, Captain Brian Weiss, the deciding official, issued his decision to remove Mr. Rickel. The agency terminated him the next day.

B

Mr. Rickel filed an appeal with the Merit Systems Protection Board alleging that his removal was the result of unlawful retaliation against him for his protected disclosures. The Board found that the agency had proven by a preponderance of the evidence that Mr. Rickel had failed to follow instructions and that the penalty of removal, though harsh, did not exceed the tolerable bounds of reasonableness.

The Board also found that Mr. Rickel had established that he had engaged in protected whistleblowing activity[2] and that such activity was a contributing factor in the decision to remove him.[3] But, according to the Board, the agency had proven "by clear and convincing evidence that it would have removed [Mr. Rickel] even in the absence of his protected activity." Appx78. In making this last finding, the Board considered the three *Carr* factors:

> (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any

---

[2]   Specifically, Mr. Rickel had established that he had engaged in protected whistleblowing activity by "participating in his IRA appeal" and "making protected disclosures regarding the following matters": (1) agency managers allegedly violating HIPAA by requiring Mr. Rickel to provide them with his personal information; (2) the fire department allegedly "cheating" during evaluation exercises; (3) Deputy Chief Gray allegedly falsifying his resume by claiming experience that he did not have; (4) Chief Brusoe, Deputy Chief Gray, and former Deputy Chief James Sherer allegedly lacking the specialized experience to serve as Incident Commander during a shipboard emergency; (5) Assistant Chief Tom Lyszkowski allegedly being placed in an operational status before he had sufficiently recovered to meet the physical requirements of his position; and (6) the fire inspectors allegedly falsified building inspection reports being submitted. *See* Appx46–73.

[3]   Specifically, Mr. Rickel established the following protected whistleblowing activity met the knowledge/timing test and was more likely than not a contributing factor in the decision to remove him: (1) Mr. Rickel's IRA appeal, (2) his HIPAA-related disclosures, (3) his disclosures regarding the fire department "cheating," and (4) his disclosures regarding Deputy Chief Gray falsifying his resume. *See* Appx74–78.

motive to retaliate on the part of the agency's offi-
cials who were involved in the decision; and (3) any
evidence that the agency takes similar action
against employees who did not engage in protected
activity but who are otherwise similarly situated.

Appx79 (citing *Carr v. Soc. Sec. Admin.*, 185 F.3d 1318,
1323 (Fed. Cir. 1999)).

Regarding *Carr* factor one, the Board found that "the
agency presented strong evidence in support of its action."
Appx79. The Board iterated that "the record clearly estab-
lished that [Chief] Brusoe properly directed [Mr. Rickel] to
fix the department's training records by a particular date,
that the assigned task squarely fell within the duties and
responsibilities of [Mr. Rickel's] position despite his ada-
mant insistence to the contrary, and, even if the excuses
[Mr. Rickel] offered might be viewed as justifying his fail-
ure to complete the task by the original date [Chief] Brusoe
set, [Mr. Rickel] had not completed updating the depart-
ment's training records in the 2 months after that date
passed." Appx79. The Board further noted that, "while the
penalty the agency imposed was undoubtedly harsh, the
primary basis for [Captain] Weiss's decision to impose the
penalty of removal, [i.e., Mr. Rickel's] failure to demon-
strate rehabilitative potential by acknowledging his mis-
conduct, expressing contrition, or accepting any
responsibility for his failure, [was] also well-supported by
the record." Appx79–80. Thus, the Board decided, "the
strength of the agency's evidence in support of its action
weigh[ed] heavily in the agency's favor." Appx80.

Regarding *Carr* factor two, the Board found "that [Cap-
tain] Weiss had only a weak motive to retaliate against
[Mr. Rickel], and that while [Chief] Brusoe had a some-
what stronger motive to retaliate against [Mr. Rickel] on
the basis of his protected whistleblowing activity, even
[Chief] Brusoe's motive to retaliate was tempered by the
fact that he did not suffer any significant adverse

consequences as a result of [Mr. Rickel's] protected activity." Appx82.

Regarding *Carr* factor three, the Board observed that "[t]he record contains very little evidence pertinent to [this] factor, i.e., any evidence that the agency takes similar actions against employees who did not engage in protected activity but who are otherwise similarly situated." Appx82. According to the Board, the agency did not present any evidence suggesting that "it had ever disciplined a similarly situated fire department employee who was not a whistleblower. At best, during questioning by agency counsel, [Mr. Rickel] conceded that the agency had not removed another whistleblower who was an employee of the fire department." Appx82. But, as the Board stated, "the relevant comparison is between the whistleblowing-appellant and a similarly situated non-whistleblower," not a comparison between two whistleblowers. Appx82. The Board thus found Mr. Rickel's concession irrelevant.

Although Mr. Rickel "identified numerous incidents during which unnamed fire department employees allegedly committed misconduct for which they allegedly received no punishment," the Board found that: (1) Mr. Rickel was not "in a position to know whether any particular employee received discipline for any particular act of misconduct"; (2) it was not clear "whether these unnamed employees were whistleblowers or not" or whether Mr. Rickel "would have been in a position to know whether any of these employees had engaged in whistleblowing activity"; and (3) "none of the incidents [Mr. Rickel] described involved an employee who failed to follow a supervisor's instructions with respect to performing a particular duty encompassed within the responsibilities of that employee's position." Appx83. The Board accordingly found "that the incidents [Mr. Rickel] identified" do not support or establish that he "was treated more harshly than a similarly-situated non-whistleblower." Appx83–84.

The Board ultimately "conclude[d] that neither party has offered evidence relevant to the third *Carr* factor" and that, "[i]n accordance with *Whitmore*," it was "appropriate to remove consideration of the third *Carr* factor in this case." Appx84 (citing *Whitmore v. Dep't of Lab.*, 680 F.3d 1353, 1374 (Fed. Cir. 2012)). The Board further concluded that, "given the strength of the agency's evidence in support of its action against [Mr. Rickel] and the relative weakness of any motive to retaliate against [him], particularly with respect to the decision-maker, [Captain] Weiss," the agency had "carried its burden of presenting clear and convincing evidence that it would have removed [Mr. Rickel] even in the absence of his protected whistle-blowing activity." Appx84.

Mr. Rickel timely petitioned for review. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## II

"The scope of our review of a decision of the Board is limited." *Carr*, 185 F.3d at 1321. By statute, we set aside the judgment of the Board only if the decision is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

## III

5 U.S.C. § 2302(b)(8) prohibits an agency from penalizing its employees for whistleblowing. "An employee who believes he has been subjected to illegal retaliation must prove by a preponderance of the evidence that he made a protected disclosure that contributed to the agency's action against him." *Smith v. GSA*, 930 F.3d 1359, 1365 (Fed. Cir. 2019). "If the employee establishes this *prima facie* case of reprisal for whistleblowing, the burden of persuasion shifts to the agency to show by clear and convincing evidence that

it would have taken 'the same personnel action in the absence of such disclosure,' which we sometimes refer to as a showing of 'independent causation.'" *Miller v. DOJ*, 842 F.3d 1252, 1257 (Fed. Cir. 2016) (citations omitted). In determining whether the agency has carried its burden, the Board considers the three nonexclusive *Carr* factors. *See Carr*, 185 F.3d at 1323.

Here, Mr. Rickel concedes that the agency "sufficiently proved that [he had] failed to follow instructions" and "that the penalty of removal did not exceed the tolerable bounds of reasonableness." Appellant's Br. 13–14. He also "does not contest that as to the first *Carr* factor, 'the strength of the [a]gency's evidence in support of removal,' the [a]gency presented substantial evidence that this factor weigh[s] in favor of the [a]gency meeting its burden." *Id.* at 27–28 (citation omitted). Nor does he take issue with the Board's findings as to the second *Carr* factor—i.e., "that [Captain] Weiss had a 'weak' motive to improperly retaliate against him" or that Chief Brusoe "had a 'stronger' motive [than Captain Weiss] to do so." *Id.* at 28. Rather, Mr. Rickel challenges only the Board's application of the third *Carr* factor.

A

Mr. Rickel first contends that the Board failed to consider Captain Weiss's testimony and therefore improperly disregarded evidence relevant to *Carr* factor three. Captain Weiss had testified that: (1) before Mr. Rickel, he had not terminated an employee for one charge of failure to follow instructions during approximately 23 years of his 25-year naval career; and (2) he "was not . . . aware of any other supervisor ever terminating an employee at the GS-11 Level (like [Mr.] Rickel) for a single charge of failure to follow instructions." Appellant's Br. 18 (emphasis omitted). Mr. Rickel asserts that this testimony should have been treated as "evidence of how the [a]gency has treated other employees charged with a single count of failure to follow instructions" and that it "was reversible error" not to

consider this testimony because *Carr* requires the Board "to consider all evidence when evaluating and applying the three prong test." *Id.* at 21. We disagree.

Under *Carr* factor three, the Board "examines the agency's treatment of non-whistleblower employees accused of similar misconduct." *Siler v. EPA*, 908 F.3d 1291, 1299 (Fed. Cir. 2018). "The third *Carr* factor looks at 'any evidence that the agency takes similar actions against employees who are *not whistleblowers* but who are *otherwise similarly situated.*'" *Id.* (quoting *Miller*, 842 F.3d at 1262). Here, Captain Weiss's testimony does not address or identify any employee who engaged in misconduct similar to Mr. Rickel's. Rather, Captain Weiss testified that he was unaware of an employee who had engaged in similar conduct and whom the agency had terminated. In the absence of other record evidence, such testimony suggests only that there is no record evidence regarding whether the agency has taken similar actions with respect to employees who are not whistleblowers but who are otherwise similarly situated. *See Ingram v. Dep't of the Army*, 777 F. App'x 980, 983–84 (Fed. Cir. 2019) ("Though the absence of evidence regarding similarly situated employees cannot favor the government, 'the absence of any evidence relating to *Carr* factor three can effectively remove that factor from the analysis.'" (quoting *Whitmore*, 680 F.3d at 1374) (citing *Siler*, 908 F.3d at 1299)).

Moreover, "[f]or an employee to be considered similarly situated to an individual who is disciplined, it must be shown that *the conduct and the circumstances surrounding the conduct of the comparison employee* are similar to those of the disciplined individual." *Carr*, 185 F.3d at 1326–27 (emphasis added). So, here, there would need to be some evidence tying Captain Weiss's testimony to an actual employee and, more specifically, to a comparison employee that had engaged in misconduct similar to Mr. Rickel's. Even if Captain Weiss's testimony did suggest that no employee has been disciplined in a similar manner to

Mr. Rickel, this does not lay the foundation for establishing that a comparison employee exists. *See Whitmore*, 680 F.3d at 1373–74 ("Differences in kind and degrees of conduct between otherwise similarly situated persons within an agency can and should be accounted for to arrive at a well reasoned conclusion regarding *Carr* factor three, particularly where, as here, there was only a single person in the record for which a comparison can be made . . . ."). And no such evidence otherwise exists in the record.

B

Mr. Rickel also argues that, "[i]n a case such as this, where <u>all</u> officials involved in removal are found to have to some extent an improper motive to remove the employee, and at least one has a 'stronger' improper motive[,] . . . justice and a furtherance of the intent of Congress requires that an agency provide some degree of evidence as to *Carr* factor three, not that it be wholly ignored." Appellant's Br. 22. In other words, Mr. Rickel asserts that we "should create a bright-line rule" requiring the agency to "produce[] some evidence in support of *Carr* factor three" to meet its burden in removal cases where the Board finds that there is "some motivation to retaliate against the [removed] employee, and one or more [of the decision makers] has more than a 'weak' motive." *Id.* We decline to do so.

The third *Carr* factor is one of "three nonexclusive factors" the Board considers when evaluating whether an agency has "show[n] by clear and convincing evidence that it would have taken 'the same personnel action in the absence of [a protected] disclosure." *Smith*, 930 F.3d at 1365 (citation omitted); *see also* 5 U.S.C. § 1221(e)(2). These "factors are merely appropriate and pertinent considerations for determining whether the agency" has carried this burden. *Whitmore*, 680 F.3d at 1374. But, as we have repeatedly explained, "*Carr* imposes no affirmative burden on the agency to *produce* evidence for each of the three factors." *Smith*, 930 F.3d at 1366; *see also Staley v. Dep't of Veterans*

*Affs.*, No. 2020-2127, 2021 WL 2965007, at \*2 (Fed. Cir. July 15, 2021) ("An agency is not required to produce evidence with respect to each and every one of these factors."). The proper inquiry still remains whether the agency would have taken the same action, absent the whistleblowing. *See Smith*, 930 F.3d at 1366; *Miller*, 842 F.3d at 1257 ("The issue . . . is whether substantial evidence supports the Board's determination that the [agency] showed independent causation by clear and convincing evidence."); *Ingram*, 777 F. App'x at 983 ("*Carr* does not require that each of the three factors individually weigh in favor of the agency."). Indeed, we have repeatedly stated that the agency "need not produce evidence with regard to each of the[] factors, nor must each factor weigh in favor of the agency for [it] to carry its burden." *Robinson v. Dep't of Veterans Affs.*, 923 F.3d 1004, 1018–19 (Fed. Cir. 2019).

While we have said that "the Board cannot ignore record evidence relevant to the existence and strength of any motive to retaliate or the treatment of similar employees," *Smith*, 930 F.3d at 1366, what Mr. Rickel requests—with his bright-line rule proposal—is that we enhance an agency's burden of production with respect to *Carr* factor three in all removal cases where *Carr* factor two nominally favors the employee. Mr. Rickel would have us review the Board's findings with respect to each *Carr* factor independently and then apply a different standard if the evidence for *Carr* factor two favors the employee and if there is no evidence pertinent to *Carr* factor three.[4] But we have

---

[4] In doing so, Mr. Rickel ignores the Board's express observation that Chief "Brusoe's motive to retaliate was tempered by the fact that he did not suffer any significant adverse consequences as a result of [Mr. Rickel's] protected activity." Appx82; *see Amirmokri v. DOE*, 310 F. App'x 410, 414 (Fed. Cir. 2009) ("[T]he Board's determination that the

said that "the absence of any evidence relating to *Carr* factor three can effectively remove that factor from the analysis." *Whitmore*, 680 F.3d at 1374; *see Ingram*, 777 F. App'x at 983–84 ("Though the absence of evidence regarding similarly situated employees cannot favor the government, 'the absence of any evidence related to *Carr* factor three can effectively remove that factor from the analysis.'" (citation omitted)). Because the agency need not prove every factor weighs in its favor, the absence of evidence related to *Carr* factor three is not fatal to the agency.

We instead "consider the record as a whole and balance the *Carr* factors to determine whether substantial evidence supports the Board's finding that the [agency] clearly and convincingly proved it would have removed [the employee] independent of his protected disclosures." *Robinson*, 923 F.3d at 1019; *see also Ingram*, 777 F. App'x at 984 ("The lack of evidence on the third *Carr* factor appears neutral, and we hold substantial evidence supports the AJ's finding that the evidence supporting the first two *Carr* factors carries the Army's burden."). And our consideration of *Carr* factors one and two should not transform the Board's three-factor balancing test into a production requirement for the agency with respect to *Carr* factor three simply because *Carr* factor two weighs nominally in the employee's favor. Thus, while it is true that "the absence of any evidence concerning *Carr* factor three may well cause the agency to fail its case overall," it will not *necessarily* do so. *Whitmore*, 680 F.3d at 1374; *Siler*, 980 F.3d at 1299.

_____

Deputy Director of Nuclear Operations had little or no motive to retaliate was amply supported by evidence that the supervisor had suffered no adverse consequences from Mr. Amirmokri's protected disclosures.").

## IV

It is not for this court to reweigh evidence on appeal. Substantial evidence supports the Board's conclusion that the agency met its clear and convincing burden, particularly when "considering the evidence in the aggregate, including the strength of *Carr* factor one." *Robinson*, 923 F.3d at 1020.

## AFFIRMED

No costs.