NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**KHURSHID KHAN MUHAMMAD,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2023-2132

---

Petition for review of the Merit Systems Protection Board in Nos. DE-1221-15-0371-B-1, DE-1221-16-0182-B-1.

---

Decided: August 8, 2024

---

KHURSHID KHAN MUHAMMAD, Artesia, CA, pro se.

AUGUSTUS JEFFREY GOLDEN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BRIAN M. BOYNTON, ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY.

---

Before LOURIE, PROST, and REYNA, *Circuit Judges*.

PER CURIAM.

Dr. Khurshid Khan Muhammad petitions for review of the final decision of the Merit Systems Protection Board ("the Board") denying his request for corrective action pursuant to the Whistleblower Protection Act ("WPA"). *See Muhammad v. Dep't of Veterans Affs.*, No. DE-1221-15-0371-B-1, 2023 WL 3580506 (M.S.P.B. May 15, 2023) ("*Decision*"), P.A. 1–24.[1]  For the following reasons, we *affirm*.

## BACKGROUND

### I

On October 20, 2014, the Department of Veterans Affairs ("the agency") appointed Dr. Muhammad as a Fee Basis Physician[2] at the New Mexico Veterans Affairs Healthcare System in Albuquerque, New Mexico. *Decision*, P.A. 3.  His appointment initially covered the period from October 20, 2014, to September 30, 2015. *Id.*  He was assigned a panel of 1,195 patients, who he began seeing on October 27, 2014. *Id.*

On November 4, 2014, the Acting Associate Chief of Staff for Ambulatory Care sent Dr. Muhammad an email noting that she was working on redistributing the panel of patients he was assigned to cover and asked if he would be willing to work a full-time schedule until she could complete that task. *Id.*  Later that evening, Dr. Muhammad and the Associate Chief of Staff had a telephone

---

[1]   "P.A." refers to the informal appendix filed with Petitioner's Brief.

[2]   A "Fee Basis Physician" is a temporary appointee who receives a set fee per patient visit or procedure.  Fee basis physicians are not paid for any administrative time or other duties that do not involve patient visits or procedures.

conversation during which Dr. Muhammad raised concerns about being assigned to see a panel of over 1,000 patients, which he believed to be a patient safety issue. *Id.* According to Dr. Muhammad, the Associate Chief of Staff had a "very angry tone" and told him that if he did not want the job, she had plenty of physicians lined up for the position. *Id.* at P.A. 4.

Following that telephone call, Dr. Muhammad responded to the Associate Chief of Staff's email by indicating that he was unable to work full-time due to personal and family commitments. *Id.* He offered to temporarily work a 5-day week but listed several reasons why he should not be assigned a full panel of patients, such as his concern for the patients' continuity of care given the temporary nature of his appointment. *Id.* He presented various options for what he believed would allow him to provide services for the agency at an acceptable level of patient safety. *Id.* Only one of those options involved assigning him a panel of patients, which he proposed be limited to 400 patients. *Id.* He concluded, "If none of the above is workable then I am afraid I am unable to provide what you are expecting," in which case he suggested he could remain on staff on an as-needed basis. *Id.* (quoting P.A. 160). The Associate Chief of Staff responded that she would reassign his patients and asked if he would continue working for the rest of the week. *Id.* She also offered him a part-time position in Gallup, New Mexico. *Id.* at P.A. 5. Dr. Muhammad responded, indicating he would work the remainder of that week but that he was not interested in the part-time Gallup position. *Id.* He asked if he would be retained on an as-needed basis or if he would instead be terminated. *Id.* The Associate Chief of Staff responded only that she would let him know about future needs. *Id.* Dr. Muhammad continued to see patients through Friday, November 7, 2014. *Id.* On or around November 10, 2014, Dr. Muhammad's credentials at the Albuquerque facility and his computer access to patient records were terminated. *Id.*; P.A. 162.

## II

In May 2015, Dr. Muhammad filed an Individual Right of Action ("IRA") appeal at the Board, alleging that the agency retaliated against him by threatening to terminate and then terminating him in response to his disclosures to the Associate Chief of Staff about his concerns for patient safety. *Decision*, P.A. 6. While that appeal was pending, Dr. Muhammad learned that his appointment was still effective and that he had not actually been terminated. *Id.* The administrative judge ("AJ") dismissed the appeal without prejudice, allowing Dr. Muhammad to refile it to include additional claims (once administratively exhausted) relating to the agency's ongoing decisions to terminate his clinical privileges and not assign him further work. *Id.*

In January 2016, after exhausting his administrative remedies as to all claims, Dr. Muhammad filed a second IRA appeal, which was joined with his first appeal. *Id.* at P.A. 7.

The AJ issued an initial decision on December 29, 2016, finding that Dr. Muhammad had made a protected disclosure when he informed the Associate Chief of Staff of his belief that assigning him to a panel of over 1,000 patients would create a substantial and specific danger to public health and safety. *Id.*; *see Muhammad v. Dep't of Veterans Affs.*, No. DE-1221-15-0371-W-2, 2016 WL 7508794 (M.S.P.B. Dec. 29, 2016) ("*Initial Decision*"), P.A. 43–68. The AJ further found that Dr. Muhammad had established that his disclosure was a contributing factor in the agency's decisions to terminate his clinical privileges and not assign him additional work. *Decision*, P.A. 7. But because Dr. Muhammad had not actually been terminated, the AJ found that he had failed to prove his reprisal claim as to that personnel action. *Id.* Despite those findings, the AJ found that the agency had shown by clear and convincing evidence that it would have taken the same personnel

actions in the absence of Dr. Muhammad's protected disclosure. *Id.* Dr. Muhammad timely petitioned for Board review of the AJ's decision. *Id.*

On February 21, 2023, the Board issued an order affirming the AJ's denial of Dr. Muhammad's request for corrective action concerning his alleged termination, denial of additional work, and termination of his clinical privileges. *Id.*; *see Muhammad v. Dep't of Veterans Affs.*, No. DE-1221-15-0371-W-2, 2023 WL 2137365 (M.S.P.B. Feb. 21, 2023) ("*Remand Order*"), P.A. 25–42. However, the Board remanded to the AJ for additional factual findings on Dr. Muhammad's claim that the agency had threatened to terminate him, a separate basis for an IRA appeal which the AJ had not addressed. *Decision*, P.A. 8; 5 U.S.C. § 2302(b)(8) (stating that it is a prohibited personnel practice to "threaten to take" a personnel action against an employee because of that employee's protected disclosure).

On remand, the AJ again denied Dr. Muhammad's request for corrective action, finding that he had not shown by a preponderance of the evidence that the agency had threatened to terminate him. *See generally Decision*, P.A. 10–15. That decision, which incorporated the entirety of the findings of the Initial Decision, became the final decision of the Board on June 19, 2023, when Dr. Muhammad did not file a petition for review by the full Board.

Dr. Muhammad timely petitioned for review of the Board's final decision. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Our review of the Board's decision is circumscribed by statute. We may not reverse a Board decision unless it is "(1) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence."

5 U.S.C. § 7703(c). Accordingly, although Dr. Muhammad is afforded a liberal construction of his pleadings as a *pro se* litigant, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), we will generally not overturn a Board decision unless it is contrary to law, or it is not supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

On appeal, Dr. Muhammad raises two principal challenges to the Board's decision. First, he argues that the Board erred in determining that the agency demonstrated by clear and convincing evidence that it would have terminated his clinical privileges and denied him additional work even in the absence of his protected disclosure. *See* Pet'r Br. at 4.[3] Second, he argues that the Board erred in finding that he had failed to show by a preponderance of the evidence that the Associate Chief of Staff had threatened to terminate him in response to his protected disclosure. *See id.* at 5. We address each argument in turn.

I

When, as here, a petitioner establishes a *prima facie* case of reprisal for whistleblowing, the burden of persuasion shifts to the agency to show by clear and convincing evidence that it would have taken "the same personnel action in the absence of such disclosure." 5 U.S.C. § 1221(e)(2). In determining whether the agency has met its burden, the Board will consider all relevant factors, including those set forth in *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999) ("the *Carr* factors"). Those factors are (1) the strength of the agency's evidence in support of its personnel action; (2) the existence

---

[3] Page references to Dr. Muhammad's Informal Brief, which includes 27 continuation pages, are to the ECF page numbers identified in the header of the brief.

and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Id.*

We find the Board's determination that the agency satisfied its burden of establishing that it would have taken the same actions in the absence of Dr. Muhammad's protected disclosure to be supported by substantial evidence. The AJ and Board alike carefully considered each of the *Carr* factors, finding the agency's evidence for the first two factors "particularly compelling." *Remand Order*, at P.A. 33.

With respect to the first *Carr* factor—the agency's evidence in support of the personnel action—the Board carefully considered the evidence and found that the agency terminated Dr. Muhammad's clinical privileges and ceased assigning him additional work because it reasonably believed that Dr. Muhammad could not meet the agency's requirement for a physician who could cover a panel of over 1,000 patients on a temporary basis. *See id.* at P.A. 33; *id.* at P.A. 35 (noting Associate Chief of Staff's testimony that "she terminated [Dr. Muhammad]'s clinical privileges because he would no longer be seeing patients" and that "she did not assign [Dr. Muhammad] work for the remainder of his appointment because she needed a full-time, rather than part-time, physician"). The Board's conclusion that the agency's actions were taken for that reason, not Dr. Muhammad's protected disclosure, was supported by substantial evidence, including testimony regarding the parties' understanding of the scope of Dr. Muhammad's appointment, *see id.* at P.A. 34, the content of various email exchanges, *id.* at P.A. 36, and the Associate Chief of Staff's statements in a Provider Exit Review form upon termination of Dr. Muhammad's clinical privileges, *id.* at P.A. 37–38.

The Board also thoroughly considered the second *Carr* factor—the existence or strength of any motive for the Associate Chief of Staff to retaliate—and found that, while the Associate Chief of Staff "might have had some motive to retaliate," that motive would not have been strong. *Id.* at P.A. 38. This conclusion too was supported by substantial evidence, such as the Associate Chief of Staff's immediate response to Dr. Muhammad's protected disclosure, asking if he would be interested in an available part-time position in Gallup, New Mexico. *Id.* at P.A. 38–39. In the Board's view, that the Associate Chief of Staff offered Dr. Muhammad another position was inconsistent with a strong retaliatory motive and suggested that "she may not have even perceived [Dr. Muhammad's] concerns about the size of the panel to have been a [protected] disclosure." *Id.* at P.A. 39.

Dr. Muhammad's challenge to the Board's analysis of the first two *Carr* factors appears to rest on the deference the Board afforded to the AJ's credibility determinations regarding the Associate Chief of Staff's testimony. *See generally* Pet'r Br. at 11–24. But an AJ's credibility determinations, which are "virtually unreviewable" by this court, *Hambsch v. Dep't of Treasury*, 796 F.2d 430, 436 (Fed. Cir. 1986), will not be disturbed unless they are inherently improbable, discredited by undisputed evidence, or contrary to physical facts, *Hanratty v. Dep't of Transp.*, 819 F.2d 286, 288 (Fed. Cir. 1987). That is not the case here, where the Associate Chief of Staff's testimony "was consistent with her contemporaneous statements and actions after she learned [that Dr. Muhammad] was unable to work full-time and cover a full panel of patients." *Remand Order*, P.A. 35. As the Board observed, the AJ properly assessed that testimony and gave it proper weight in light of Dr. Muhammad's conflicting arguments and testimony. *Id.* Although Dr. Muhammad may disagree with the weight accorded to that testimony, it is not our role to reweigh the evidence anew. *Rickel v. Dep't of the Navy*, 31 F.4th 1358,

1366 (Fed. Cir. 2022). We therefore decline to disturb the AJ's and Board's treatment of witness credibility.

We turn now to the third *Carr* factor—evidence that the agency takes similar actions against similarly-situated employees who are not whistleblowers—which the Board found to be neutral. *Remand Order*, P.A. 40. Although Dr. Muhammad argued (and maintains on appeal, *see* Pet'r Br. at 24–27) that the agency treated various other Fee Basis Physicians differently, the Board credited the AJ's determination that those physicians were not similarly situated because such employees are generally appointed "under individualized arrangements to meet specific needs." *Remand Order*, P.A. 40. Although Dr. Muhammad is correct that, when available, the third *Carr* factor may be the "most helpful inquiry" in determining whether the agency would have imposed the same penalty in the absence of a protected disclosure, *see* Pet'r Br. at 26–27 (quoting *Whitmore v. Dep't of Lab.*, 680 F.3d 1353, 1374 (Fed. Cir. 2012)), it is just as true that there is no affirmative burden for the agency to produce evidence with respect to that factor to prevail. *Rickel,* 31 F.4th at 1366. This is particularly true where the agency's evidence regarding the first two *Carr* factors is strong. We therefore see no error in the Board's treatment of the third *Carr* factor.

At bottom, Dr. Muhammad's challenges distill down to disagreements with the Board's assessment and weighing of the evidence—particularly, testimonial evidence. But "[i]t is not for this court to reweigh evidence on appeal." *Id.* Consequently, we conclude that substantial evidence supports the Board's determination that the agency met its burden in establishing that it would have taken the same action, even had Dr. Muhammad not made a protected disclosure.

## II

Dr. Muhammad also challenges the AJ's determination on remand that he had not established by a preponderance

of the evidence that the agency had threatened to terminate him during his November 4, 2014, telephone conversation with the Acting Chief of Staff. Pet'r Br. at 27–29. Whether a specific agency action is a threat is a fact-specific inquiry. *See Koch v. S.E.C.*, 48 F. App'x 778, 787 (Fed. Cir. 2002). We find the AJ's determination supported by substantial evidence.

As an initial matter, it is worth noting that the AJ found that Dr. Muhammad *did* establish by preponderant evidence that, on November 4, 2014, the Acting Chief of Staff "said words to the effect of 'if you don't want to do this job, I have plenty of physicians signed up for this position, so do you want to think if over tonight and let me know in the morning.'" *Decision*, P.A. 13. The AJ further found that it was more likely than not that the Acting Chief of Staff "was short with [Dr. Muhammad] in a manner that could reasonably be perceived to be angry." *Id.*

Despite these findings, the AJ concluded that Dr. Muhammad failed to establish that "that statement, in context, was a threat to terminate [Dr. Muhammad]'s appointment" because it did not contain any threat to *take action* against Dr. Muhammad, but instead posed a question about whether Dr. Muhammad wished to work the Fee Basis Physician position to which he was appointed. *Id.* at P.A. 14 (citing *Rebstock Consolidation v. Dep't of Homeland Sec.*, No. DA-1221-15-0060-W-1, 2015 WL 5695884 (M.S.P.B. Sept. 29, 2015)). The AJ supported that determination by finding that Dr. Muhammad's own action of responding to the Acting Chief of Staff's question, indicating that he could not work in the full-time position, was inconsistent with a belief that he was threatened of being terminated. *Id.* at P.A. 14–15. Instead, those actions indicated that Dr. Muhammad understood himself to be negotiating the terms of his appointment. *Id.* at P.A. 15. And the AJ further found that the fact that the Acting Chief of Staff offered Dr. Muhammad a part-time position was inconsistent with her statement being a threat. *Id.* This was

because the statement "reflected [the Acting Chief of Staff's] understanding that [Dr. Muhammad] did not want to work full time, but was interested in working part time." *Id.* That is substantial evidence that supports the AJ's decision.

## CONCLUSION

We have considered Dr. Muhammad's remaining arguments and find them unpersuasive. Accordingly, the Board's final decision is *affirmed.*

## **AFFIRMED**

### COSTS

No costs.