NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DEBORAH MOUTON-MILLER,**

*Petitioner*

**v.**

**DEPARTMENT OF HOMELAND SECURITY,**

*Respondent*

---

2025-1173

---

Petition for review of the Merit Systems Protection Board in Nos. AT-1221-19-0742-W-4 & AT-1221-21-0039-W-4.

---

Decided: October 15, 2025

---

DEBORAH N. MOUTON-MILLER, Dallas, GA, pro se.

MATTHEW LEWIS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by ALBERT S. IAROSSI, PATRICIA M. MCCARTHY, YAAKOV ROTH.

---

Before LOURIE, REYNA, and CHEN, *Circuit Judges.*

PER CURIAM.

Former Department of Homeland Security ("DHS") employee Deborah Mouton-Miller petitions for review of a final decision of the Merit Systems Protection Board ("the Board") denying her request for corrective action in individual right of action ("IRA") appeals AT-1221-19-0742-W-4 (the "0742 appeal") and AT-1221-21-0039-W-4 (the "0039 appeal"). S.A. 1–28 ("*Board Decision*").[1] For the following reasons, we *affirm*.

## BACKGROUND

In April 2017, Mouton-Miller began a one-year probationary period as a Supervisory Auditor, GS-14, in DHS's Office of Inspector General ("OIG" or "the agency"). *Board Decision*, S.A. at 2. During her probationary period, Mouton-Miller sent emails to OIG management officials stating that audit templates were missing necessary steps in accordance with Generally Accepted Government Auditing Standards ("GAGAS"). *Id.* In March 2018, an agency official notified Mouton-Miller that she failed to complete her supervisory probationary period because of unsatisfactory performance. *See id.* at 3. OIG then reassigned Mouton-Miller to a non-supervisory position as a Communications Analyst. *Id.*

Following her reassignment, Mouton-Miller applied for multiple positions with OIG and other agencies. *Id.* at 3–4. She was not selected for any position. *See id.* at 3.

In June 2019, Mouton-Miller filed a first complaint at the Office of Special Counsel ("OSC"). *Id.* She alleged that OIG reassigned and then removed her from her supervisory duties in retaliation for protected whistleblowing activity—her emails regarding the agency's

---

[1] S.A. refers to the appendix filed with the Response Brief.

alleged noncompliance with audit rules. *See* P.A. 21.[2] While the first complaint was pending, Mouton-Miller filed a second complaint. *Board Decision* at 4. In that complaint, she alleged that OIG officials failed to promote her internally and interfered with external promotions or appointment opportunities in retaliation for her emails. *Id.*

The OSC closed its investigations and notified Mouton-Miller of her Board appeal rights. *See id.* at 3–4. Mouton-Miller then filed an IRA appeal under the Whistleblower Protection Act ("WPA") for each complaint. *See id.* In both appeals, the Administrative Judge ("AJ") determined that Mouton-Miller's email communications were protected disclosures—specifically, disclosures that an employee reasonably believed showed the violation of an agency rule. *See id.* at 5.

The AJ first decided the 0742 appeal. S.A. 30–53 ("*0742 Decision*"). The AJ determined that Mouton-Miller had met her burden that she made at least one protected disclosure that was a contributing factor to her reassignment. *0742 Decision*, S.A. at 45. But the AJ also determined that the agency had met its burden to show by clear and convincing evidence that it would have proposed her reassignment even in the absence of her protected whistleblowing. *Id.* The AJ thus denied Mouton-Miller's request for corrective action. *Id.*

The AJ next decided the 0039 appeal. S.A. 54–81 ("*0039 Decision*"). The AJ determined that Mouton-Miller failed to meet her burden to show that her protected disclosures were contributing factors to all but one of the personnel actions at issue. *0039 Decision*, S.A. at 72. As to the personnel action about which Mouton-Miller met her burden, the AJ concluded the agency had also met its

---

[2] P.A. refers to the appendix filed with the Petitioner's Informal Brief.

burden of proving by clear and convincing evidence that it would have taken the same action even in the absence of Mouton-Miller's protected whistleblowing. *Id.* The AJ thus denied Mouton-Miller's request for corrective action in that appeal as well. *Id.*

Mouton-Miller then petitioned for review of the AJ's initial decisions. *Board Decision*, S.A. at 1. After consolidating them, the Board issued an opinion agreeing with the AJ's findings.[3] *Id.* at 2. The Board thus denied Mouton-Miller's petitions for review and affirmed each decision. *See id.* at 2, 6–7. Mouton-Miller timely petitioned for review at this court; we have jurisdiction under 28 U.S.C. § 1295(a)(9) and 5 U.S.C. § 7703(b)(1)(A).

## DISCUSSION

Mouton-Miller disputes the Board's decisions in each IRA appeal. We address each in turn.

## I.

The scope of our review is limited by statute. We must affirm the Board's decision unless it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Higgins v. Dep't of Veterans Affs.*, 955 F.3d 1347, 1353 (Fed. Cir. 2020) (citation omitted).

We analyze IRA appeals brought pursuant to the WPA under a burden-shifting framework. *Miller v. Dep't of Just.*, 842 F.3d 1252, 1257 (Fed. Cir. 2016). First, the

---

[3] While the Board ultimately agreed with the AJ's decision denying corrective action in the 0742 appeal, it modified the AJ's analysis to comport with the proper legal standard. *Board Decision*, S.A. at 9; *see infra* n.4.

"burden lies with the employee to show 'by a preponderance of the evidence that he or she made a protected disclosure under [5 U.S.C.] § 2302(b)(8) that was a contributing factor to the employee's [personnel action]." *Id.* (quoting *Whitmore v. Dep't of Lab.*, 680 F 3d 1353, 1367 (Fed. Cir. 2012)). If the employee satisfies that burden, the burden of persuasion shifts to the agency to show independent causation—that is, "clear and convincing evidence that [the agency] would have taken 'the same personnel action in the absence of such disclosure.'" *Id.*

In determining whether the agency has successfully established independent causation, we apply the *Carr* factors. *Id.* (citing *Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999)). Three nonexclusive *Carr* factors are:

> [1] the strength of the agency's evidence in support of its personnel action; [2] the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and [3] any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.

*Id.* But *Carr* "does not impose an affirmative burden on the agency to produce evidence with respect to each and every one of the three *Carr* factors to weigh them each individually in the agency's favor." *Id.* (quoting *Whitmore*, 680 F.3d at 1374). Rather, the *Carr* factors are "merely appropriate and pertinent considerations for determining whether the agency [has carried] its burden of proving by clear and convincing evidence that the same action would have been taken absent the whistleblowing." *Id.*

## II.

We begin with the 0742 appeal. Mouton-Miller argues that the Board erred in determining that OIG

demonstrated by clear and convincing evidence that it would have reassigned her even in the absence of her protected disclosures. *See* Pet'r Inf. Br. at 1–3. Because DHS does not dispute that Mouton-Miller satisfied her burden to show that she made a protected disclosure that contributed to her reassignment, *see* Resp. Inf. Br. at 10, we focus our review on the Board's analysis of independent causation under the *Carr* factors.

*Carr* factor one is "the strength of the agency's evidence in support of its personnel action." 185 F.3d at 1323. Under this factor, the Board focused on testimonial evidence of Mouton-Miller's performance and management deficiencies and ultimately concluded that *Carr* factor one weighed in favor of finding independent causation. *Board Decision*, S.A. at 9–10, 12.[4]

After careful review of the record, we find that the Board's conclusion was supported by substantial evidence. Mouton-Miller's second-level supervisor identified performance deficiencies such as her "micromanagement" of her subordinates and her "unwillingness to receive constructive criticism and feedback." *Id.* at 9–10. The Board noted the second-level supervisor's testimony that Mouton-Miller "repeatedly cut her off and accused the supervisor of 'disrespect' and of using an inappropriate 'tone.'" *Id.* at 10. The Board also noted that Mouton-Miller's first-line supervisor considered this to be

---

[4] In his initial decision, the AJ factored Mouton-Miller's probationary status into the *Carr* factor one analysis. *See 0742 Decision*, S.A. at 41–42. The Board then clarified the AJ's analysis that to the extent the AJ may have implied a lesser burden than clear and convincing evidence, that was not appropriate. *See Board Decision*, S.A. at 11–12. The Board, however, affirmed the AJ's decision under the clear and convincing evidence standard. *Id.* at 12.

"inappropriate" and for which "he counseled [Mouton-Miller]." *Id.*

Mouton-Miller's attempts to discredit this evidence are unavailing. Her arguments that the testimony was "biased," Pet'r Inf. Br. at 3, are unsupported by the record. The AJ found Mouton-Miller's supervisors to be credible—a finding that is "virtually unreviewable" on appeal. *See Hambsch v. Dep't of Treasury*, 796 F.2d 430, 436 (Fed. Cir. 1986). And the AJ's credibility determinations are not "inherently improbable or discredited by undisputed evidence or physical fact" such that we will disturb them. *See Hanratty v. Dep't of Transp.*, 819 F.2d 286, 288 (Fed. Cir. 1987) (citation omitted). Furthermore, the AJ stated that Mouton-Miller did not deny or contradict her second-line supervisor's accounts of her behavior, underscoring their credibility. *See 0742 Decision*, S.A. at 41.

*Carr* factor two is "the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision." 185 F.3d at 1323. The Board found no evidence that Mouton-Miller's protected disclosures related to any rescinded audits or that any of the agency officials involved in her termination were implicated by the disclosures; they therefore concluded that *Carr* factor two weighed in favor of finding independent causation. *See Board Decision*, S.A. at 12–13.

Substantial evidence supports that conclusion. Agency officials testified that Mouton-Miller's protected disclosures had no "real significance" for them because they were not personally implicated or responsible for the allegedly deficient audit templates. *0742 Decision*, S.A. at 42–43; *see Board Decision*, S.A. at 12. Furthermore, the protected disclosures were not outcome-determinative in any audit, and there was no reputational issue for the agency or officials involved in the protected disclosures. *See Board Decision* at 12. Finally, agency officials testified that Mouton-Miller's protected disclosures had no bearing

on the termination decision. *Id.* at 13. Mouton-Miller's argument that the AJ "should have given [her arguments on motivation to retaliate] more weight," Pet'r Inf. Br. at 7, is unpersuasive—it is not our role to reweigh the evidence anew. *See Rickel v. Dep't of the Navy*, 31 F.4th 1358, 1366 (Fed. Cir. 2022).

*Carr* factor three is "any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated." 185 F.3d at 1323. The Board found this factor to weigh in the agency's favor because Mouton-Miller's proposed comparator, Kathleen Hughes, was not a valid comparator. *See Board Decision*, S.A. at 14. That, however, was an incorrect reference to the AJ's findings: the AJ in fact found this factor to be neutral. *0742 Decision*, S.A. at 45.

Substantial evidence therefore does not support the Board's conclusion on the third factor. OIG did not put forth evidence of a comparator. *0742 Decision*, S.A. at 43. Mouton-Miller argues the Board erred because Hughes is a valid comparator, as they "performed the same job functions" and had the same supervisors. Pet'r Inf. Br. at 8. We disagree. Mouton-Miller was a probationary employee demoted due to her performance and management deficiencies, while Hughes was a non-probationary employee who, through no fault of her own, had an audit retracted for failure to comply with GAGAS standards. *Board Decision*, S.A. at 14; *0742 Decision*, S.A. at 44. While the Board correctly identified that there was no valid comparator, it improperly weighed this factor in the agency's favor. *See Whitmore*, 680 F.3d at 1374 ("[T]he absence of any evidence relating to *Carr* factor three can effectively remove that factor from the analysis."). Therefore, no reasonable mind could have accepted the Board's conclusion that this factor supported the agency. However, although *Carr* factor three favors neither party, the Board's conclusion—that the OIG clearly and convincingly proved it would have removed Mouton-Miller

independently of her protected disclosures—is still supported by substantial evidence based on its findings under *Carr* factors one and two.

## III.

Next, we review the 0039 appeal. Mouton-Miller argues that substantial evidence does not support the Board's findings that (1) the OIG demonstrated clear and convincing evidence that it would not have hired her for a March 2019 detail with the agency's Audits and Inspections Quality Assurance Division ("IQO") even in the absence of her protected disclosures; and that (2) her protected disclosures were not contributing factors in her failure to be hired for other positions. *See* Pet'r Inf. Br. at 4–5, 11–12, 18, 23–26. We address each argument in turn.

In March 2019, Mouton-Miller applied for a detail assignment to IQO. *See Board Decision*, S.A. at 3–4. She was not selected. *Id.* The agency does not dispute that Mouton-Miller's protected disclosures were a contributing factor in her nonselection. *See* Resp. Inf. Br. 13–17 (addressing only the *Carr* factors). Because Mouton-Miller disputes whether the OIG established by clear and convincing evidence of independent causation, we again review the Board's analysis of the *Carr* factors. *See Miller*, 842 F.3d at 1257.

The Board concluded that *Carr* factor one favored the agency due to testimonial and documentary evidence demonstrating the selectee's more relevant experience and that the selectee's reassignment would cause minimal disruption. *See Board Decision*, S.A at 21.

Substantial evidence supports the Board's conclusion. First, testimony from agency officials confirmed that the selectee had previous IQO experience, which Mouton-Miller did not. *See Board Decision*, S.A. at 21–22; *0039 Decision*, S.A. at 68. Second, an email from another agency official to Mouton-Miller indicated that the selectee could

be more readily reassigned with minimal disruption. *See Board Decision*, S.A. at 21; *0039 Decision*, S.A. at 69. Mouton-Miller's counterargument that she could have been assigned to the detail with "no disruption," based on testimony from her former supervisor, is unavailing. *See* Pet'r Inf. Br. at 4. The Board considered this evidence and found it unpersuasive, instead crediting the testimonial and documentary evidence. *See Board Decision*, S.A. at 21–22. Mouton-Miller's argument is thus another invitation for us to reweigh the evidence. We again decline to do so. *See Rickel*, 31 F.4th at 1366.

The Board found that *Carr* factor two weighed in the agency's favor because "knowledge of [Mouton-Miller's] disclosure within the agency was very limited, there was no evidence that [her] GAGAS disclosure broadly implicated management officials or employees in general, and the management officials credibly testified that the impact and import of [her] disclosure was minimal." *Board Decision*, S.A. at 22. The Board also found no evidence that an agency official with knowledge of the protected disclosures "exerted any influence on the selecting official" or the selection decision. *Id.*

Substantial evidence supports the Board's finding of no motive to retaliate. There was no evidence that the selecting official knew of Mouton-Miller's protected disclosures or that the protected disclosures personally implicated the selecting official. *See id.* Furthermore, there was no evidence that an agency official with knowledge of her protected disclosures influenced the selection process in any way. *See id.* Mouton-Miller's arguments to the contrary are unpersuasive. Indeed, she appears to make the same *Carr* factor two argument from her 0742 appeal in that she asks us to reweigh the evidence before the Board. *See* Pet'r Inf. Br. at 6–7. Her argument is unavailing for the same reason: it is not our role to reweigh the evidence anew. *See Rickel*, 31 F.4th at 1366.

The Board did not make its own explicit conclusion as to *Carr* factor three; rather, it adopted the AJ's position and found that this factor was neutral due to lack of evidence of valid comparators. *See Board Decision*, S.A. at 23; *0039 Decision*, S.A. at 71.

Substantial evidence supports the Board's conclusion, as neither the agency nor Mouton-Miller presented comparators. *Board Decision*, S.A. at 23; *0039 Decision*, S.A at 71. While she maintains otherwise, Mouton-Miller did not present any valid comparators because she does not explain how the comparators she presents are applicable to the March 2019 IQO position. *See* Pet'r Inf. Br. at 9. Thus, *Carr* factor three does not impact the independent causation analysis. *See Whitmore*, 680 F.3d at 1374. Because the *Carr* factors, on balance, weigh in favor of the agency, substantial evidence supports the Board's conclusion.

Mouton-Miller next disputes the Board's conclusion that her protected disclosures were not contributing factors in her nonselection for several other positions. *See* Pet'r Inf. Br. at 18–26. The positions were: (1) a detail assignment to IQO in August 2018; (2) a Supervisory Auditor with the U.S. Defense Contract Audit Agency ("DCAA"); (3) Director, Quality, Management, and Training ("QMT"); and (4) Lead Auditor with the U.S. Environmental Protection Agency ("EPA"). *Board Decision*, S.A. at 3–4.

Substantial evidence supports the Board's conclusion as to each position. The Board found no evidence that any official with knowledge of the protected disclosures influenced Mouton-Miller's nonselections. *Id.* at 19 (finding official with knowledge of disclosures was not part of selection process for QMT detail); *id.* (crediting consistent testimony that hiring officials for QMT detail were unaware of the protected disclosures); *id.* at 20 (crediting testimony that the eventual selectee for the EPA

position did not influence the hiring process); *see id.* at 15–16 (Mouton-Miller acknowledging that official with knowledge of disclosures was not part of the selection process for the August 2018 IQO detail). The Board also found that Mouton-Miller did not present evidence to meet her burden for any of the positions. *See id.* at 15 n.3 (finding that Mouton-Miller did not challenge the AJ's finding that "she had not provided any documentary or testimonial evidence regarding her nonselection for the DCAA position"); *id.* at 16–17, 20 (finding that Mouton-Miller did not provide evidence that agency officials with knowledge of the protected disclosures influenced the August 2018 IQO or EPA positions). The Board reasonably credited the evidence and found that Mouton-Miller's assertions of retaliatory influence were unsupported by the record.

## CONCLUSION

We have considered Mouton-Miller's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the Board's determinations denying Mouton-Miller's petitions for review of the 0742 and 0039 appeals.

## **AFFIRMED**

### COSTS

No costs.