# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

MICHAEL J. KATZ,
        Appellant,

    v.

DEPARTMENT OF VETERANS
   AFFAIRS,
        Agency.

DOCKET NUMBERS
NY-1221-16-0042-W-1
NY-1221-17-0056-W-1

DATE: August 9, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Richard E Condit</u>, Esquire, and <u>Joanna K. Wasik</u>, Esquire,
   Washington, D.C., for the appellant.

<u>Jack P. DiTeodoro</u>, Esquire, Brooklyn, New York, for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

## FINAL ORDER

¶1      The appellant has filed petitions for review of the initial decisions that denied his requests for corrective action in these two individual right of action (IRA) appeals, *Katz v. Department of Veterans Affairs*, MSPB Docket No. NY-

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

1221-16-0042-W-1 (0042 appeal), and *Katz v. Department of Veterans Affairs*, MSPB Docket No. NY-1221-17-0056-W-1 (0056 appeal). Generally, we grant petitions such as these only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). We JOIN these appeals under 5 C.F.R. § 1201.36(b) because joinder will expedite processing of the cases and will not adversely affect the interests of the parties. After fully considering the filings in these appeals, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petitions for review. Therefore, we DENY the petitions for review and AFFIRM the initial decisions, which are now the Board's final decisions. 5 C.F.R. § 1201.113(b). Except as expressly MODIFIED to clarify the administrative judge's analysis of the factors set forth in *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999), in both appeals, we AFFIRM the initial decisions.

## BACKGROUND

¶2    In July 2014, the agency selected the appellant as Chief of Orthopedic Surgery for the Brooklyn Campus of the agency's New York Harbor Healthcare System (NY Harbor). *Katz v. Department of Veterans Affairs*, MSPB Docket No. NY-1221-16-0042-W-1, Initial Appeal File (0042 IAF), Tab 110 at 65. The original SF-50 documenting the appointment indicated that this was a permanent position. 0042 IAF, Tab 50 at 3. The agency subsequently "corrected" the SF-50

to indicate that the appointment was temporary and not to exceed November 3, 2015. 0042 IAF, Tab 109 at 130. Effective July 17, 2015, the agency terminated the appointment. 0042 IAF, Tab 13 at 3, Tab 109 at 145.

¶3 On November 10, 2015, the appellant filed an IRA appeal with the Board, claiming that the agency terminated his appointment in retaliation for protected whistleblowing. 0042 IAF, Tab 1. While that appeal was still pending, on December 20, 2016, the appellant filed a second IRA appeal, claiming that the agency had changed his appointment status from permanent to temporary in retaliation for the whistleblowing that was the subject of his previous Office of Special Counsel (OSC) complaint and for initiating proceedings before OSC, the agency's Office of Resolution Management, and the Board. *Katz v. Department of Veterans Affairs*, MSPB Docket No. NY-1221-17-0056-W-1, Initial Appeal File (0056 IAF), Tab 1.

¶4 The administrative judge found that the Board has jurisdiction over both appeals. 0042 IAF, Tab 10; 0056 IAF, Tab 10. After a 3-day hearing that encompassed both appeals, the administrative judge issued separate initial decisions denying the appellant's requests for corrective action. 0042 IAF, Tab 142, Initial Decision (0042 ID) at 27; 0056 IAF, Tab 64, Initial Decision (0056 ID) at 21. In each initial decision, the administrative judge found that the appellant proved that he made protected disclosures that were contributing factors in the action at issue, but the agency proved by clear and convincing evidence that it would have taken these same actions absent the protected disclosures. 0042 ID at 19-27; 0056 ID at 17-21.

¶5 The appellant has filed petitions for review of both initial decisions, the agency has filed responses to the appellant's petitions, and the appellant has filed replies to both responses. *Katz v. Department of Veterans Affairs*, MSPB Docket No. NY-1221-16-0042-W-1, Petition for Review (0042 PFR) File, Tabs 3, 5-6; *Katz v. Department of Veterans Affairs*, MSPB Docket No. NY-1221-17-0056-W-1, Petition for Review (0056 PFR) File, Tabs 3, 5-6.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶6    On petition for review in the first appeal, the appellant challenges the administrative judge's credibility findings, arguing that she failed to make specific credibility determinations and improperly relied on witness testimony that was internally inconsistent or was contradicted by other evidence in the record. 0042 PFR File, Tab 3 at 22-29. He also argues that the administrative judge made factual findings that were inconsistent with the record evidence. *Id.* at 9-17. Additionally, he argues that the administrative judge erred by concluding that the agency proved by clear and convincing evidence that it would have terminated his appointment in the absence of his protected whistleblowing. *Id.* at 17-22.

¶7    On petition for review in the second appeal, the appellant again challenges the administrative judge's credibility determinations. 0056 PFR File, Tab 3 at 15-21. He also argues that the administrative judge erred by concluding that the agency met its burden of proving by clear and convincing evidence that it would have changed his appointment type in the absence of his protected whistleblowing activity. *Id.* at 8-15.

<u>The administrative judge made reasoned credibility determinations, and the factual findings are supported by the record.</u>

¶8    The appellant's challenges to the administrative judge's factual findings and credibility determinations do not warrant reaching a different conclusion here. The Board will defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). Mere disagreement with an administrative judge's credibility determinations and findings of fact does not provide a basis for granting review. *Diggs v. Department of Housing and Urban Development*, 114 M.S.P.R. 464, ¶ 8 (2010).

¶9     In this case, the administrative judge did not make explicit demeanor-based credibility determinations. However, by crediting the testimony of witnesses whom she observed at hearing, she made implicit demeanor-based credibility determinations to which the Board must give deference. *See Purifoy v. Department of Veterans Affairs*, 838 F.3d 1367, 1373 (2016); *Little v. Department of Transportation*, 112 M.S.P.R. 224, ¶ 4 (2009) (concluding that, when an administrative judge has heard live testimony, his credibility determinations must be deemed to be at least implicitly based upon the demeanor of the witnesses). The appellant's specific credibility challenges do not warrant setting aside that deference. For example, in the petition for review of the first Board appeal, the appellant argues that the Chief of Staff's testimony that he was the sole official responsible for initiating the appellant's termination was inconsistent with his prior testimony during an equal employment opportunity (EEO) investigation stating that other agency officials were involved in the decision. 0042 PFR File, Tab 3 at 23-24. The appellant mischaracterizes this testimony. In the EEO investigation, the Chief of Staff testified that he was the person who issued the recommendation that the appellant be terminated and that NY Harbor's Director was the deciding official on the termination decision. 0042 IAF, Tab 113 at 112-13. During the hearing, the Chief of Staff testified that he was responsible for "initiating the termination" of the appellant's employment. HT2 at 201-02 (testimony of the Chief of Staff). The Chief of Staff's statement during the EEO investigation that other officials also "recommended" that the appellant be terminated was addressing the general support for the appellant's termination in the supervisory chain within the agency's work unit as opposed to any formal involvement in the termination process. 0042 IAF, Tab 113 at 112-13. Accordingly, there is no inconsistency in the identified testimony.

¶10     The same is true of the testimony from the Chief of Surgery. 0042 PFR File, Tab 3 at 26-27. The appellant cites the Chief of Surgery's prior deposition testimony stating that he "recommended" that the appellant's appointment be

terminated. However, the Chief of Surgery noted in his deposition that his recommendation was not made as a part of the formal termination process because he lacked any actual authority to terminate the appellant. He acknowledged instead that the Chief of Staff and the appropriate Human Resources officials were responsible for that determination. 0042 IAF, Tab 114 at 375-76. This testimony was also consistent with the Chief of Surgery's hearing testimony acknowledging that only the Chief of Staff or the Director could terminate the appellant.[2] Hearing Transcript, Day 2 (HT2) at 287-89 (testimony of the Chief of Surgery).

¶11 The appellant also argues that the administrative judge disregarded evidence that he was not required to perform surgeries in his position and that he notified the agency prior to his appointment that he had not performed major surgeries for many years. 0042 PFR File, Tab 3 at 10-12. However, the administrative judge specifically addressed the agency's "incompetence" throughout the hiring process in the initial decision, highlighting testimony from agency hiring officials admitting that a "perfunctory" and inadequate vetting process caused it to hire the appellant despite his inadequate qualifications. 0042 ID at 21-23. The appellant's disagreement with the administrative judge's findings in this regard do not warrant review. *Diggs*, 114 M.S.P.R. 464, ¶ 8.

¶12 We also disagree with the appellant's argument that the administrative judge made an erroneous factual finding concerning whether he received a full faculty appointment. 0042 PFR File, Tab 3 at 14-17. The appellant argues that the administrative judge mischaracterized deposition testimony from the New York Downstate College of Medicine (SUNY)'s Acting Dean, stating that the ad hoc committee had declined to proceed with a full faculty appointment for the

---

[2] The appellant quotes hearing testimony from the Chief of Surgery acknowledging that he might have suggested to the appellant that he resign. 0042 PFR File, Tab 3 at 26-27 However, the cited testimony notably omits the Chief of Surgery's testimony responding, "No, sir," when asked whether he had fired the appellant. Hearing Transcript, Day 2 at 287 (testimony of the Chief of Surgery).

appellant. He cites her deposition testimony that she "[did not] know for sure" whether the appellant was ever given full admitting privileges. *Id.* at 15-16; 0042 IAF, Tab 114 at 583. The appellant also cites a letter showing that he had received a permanent faculty appointment that remained in effect at the time of his termination. 0042 PFR File, Tab 3 at 16-17; 0042 IAF, Tab 112 at 71.

¶13 However, as the administrative judge correctly noted, the Acting Dean also testified in her deposition that SUNY's Orthopedics Department would have put together an ad hoc committee to review the appellant's qualifications for consideration for a full faculty appointment. 0042 ID at 11; 0042 IAF, Tab 114 at 577. The Acting Dean acknowledged that she did not remember what happened with respect to the appellant's application for a full faculty appointment. However, she thought that "the ad hoc committee met and were not inclined to put [a full faculty appointment] forward," even if she did not know what happened after that. 0042 IAF, Tab 114 at 577-78. Elsewhere in her deposition, the Acting Dean testified that she remembered that SUNY's Department of Orthopedics "did not want to give [the appellant] a faculty appointment because they didn't think he was qualified," and that she "probably communicated that to [the Chief of Staff] that it did not look good." 0042 IAF, Tab 114 at 570.

¶14 Continuing, the administrative judge cited testimony from the Chief of Staff and Chief of Surgery, confirming that the Acting Dean informed them that the appellant would not receive a full faculty appointment. 0042 ID at 11-12; HT2 at 207-08 (testimony of the Chief of Staff), 288-91 (testimony of the Chief of Surgery). Accordingly, the administrative judge properly concluded, based on the testimony from numerous agency officials, that the appellant had not received a full faculty appointment at the time of his termination.

¶15 For the first time during Board proceedings, the appellant produced an unsigned and unauthenticated letter, stating that he had received a voluntary/temporary appointment with SUNY, effective January 29, 2015.

0042 IAF, Tab 112 at 71, Tab 136 at 27. The administrative judge found that this letter had little evidentiary weight, and we agree. 0042 ID at 23-25. As the administrative judge observed, the deciding official provided unrebutted testimony that she was unaware of the existence of the letter at the time she made her termination decision, and the appellant did not call the author of the letter or anyone else who might have information about the letter to testify at the hearing. 0042 ID at 15-16, 23-24. Accordingly, the appellant's challenges to the administrative judge's factual findings and credibility determinations do not provide a basis for disturbing the initial decisions.

We agree that the agency proved by clear and convincing evidence that it would have taken both personnel actions in the absence of the appellant's protected disclosures and activity but modify the administrative judge's reasoning.

¶16    In *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999), the U.S. Court of Appeals for the Federal Circuit set forth a number of factors the Board should consider in determining whether the agency met its burden of proving by clear and convincing evidence that it would have taken the challenged action in the absence of the appellant's protected whistleblowing activity, including the following: (1) the strength of the agency's evidence in support of the action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. For the reasons explained in the initial decision, we agree with the administrative judge that the agency met its burden. However, we modify the initial decisions to explain this finding more fully.

*0042 appeal*

¶17    In the first appeal, the administrative judge concluded that the first *Carr* factor, which concerns the strength of the agency's evidence in support of its action, favored the agency. 0042 ID at 21-25. She also found that there was no

evidence that any of the agency officials involved in the appellant's termination had any motive to retaliate against him, and so the second *Carr* factor also favored the agency. *Id.* at 25-27. Finally, she concluded that the record was devoid of any evidence indicating that the agency treated non-whistleblowers more leniently than whistleblowers. *Id.* at 27.

¶18 In his petition for review in the first appeal, the appellant argues that the administrative judge erred by concluding that the agency met its burden of proving by clear and convincing evidence that it would have terminated him even in the absence of his protected whistleblowing. 0042 PFR File, Tab 3 at 17-22. Specifically, he argues that the administrative judge incorrectly determined under the first *Carr* factor that the agency's reasons for terminating him were strong. 0042 PFR File, Tab 3 at 18-19. However, he does not challenge the administrative judge's findings regarding the second *Carr* factor in the first appeal.[3] Finally, he argues that because the record was devoid of any evidence regarding whether the agency treated similarly situated non-whistleblowers more leniently, the administrative judge should have concluded that the third *Carr* factor weighed against the agency. *Id.* at 21-22.

¶19 We agree with the administrative judge that the agency's reasons for terminating the appellant were strong. As set forth in greater detail in the initial decision, the evidence clearly demonstrates that the agency hired the appellant to this position with the expectation that he would be able to perform major orthopedic surgeries and supervise surgical residents, and he was unable to adequately complete either function during the course of his employment with the agency. ID at 21-22; HT2 at 210-11 (testimony of the Chief of Staff stating that he would not have hired the appellant if he had realized that it had been 20 years

---

[3] Although the appellant's petition for review in the first appeal includes a section addressing the second *Carr* factor, the arguments contained therein exclusively address the allegedly retaliatory motive of agency officials concerning the change in the appellant's appointment status, which is the subject of the second Board appeal. 0042 PFR File, Tab 3 at 19-21. We have addressed those arguments in the appropriate section of this decision.

since he last performed surgery and that he made a mistake in hiring him); HT1 at 110-11 (testimony of the appellant) (acknowledging that at the time of his appointment, he had not performed surgery since the mid-1990s). Additionally, as the administrative judge also correctly observed, at the time of the termination decision, the relevant agency officials had no reason to believe that the appellant had received a full faculty appointment with SUNY Downstate, as required to fulfill the duties of the position. 0042 ID at 24-25; 0042 IAF, Tab 112 at 46; Tab 114 at 34-35.

¶20    Regarding the third *Carr* factor, although the administrative judge acknowledged that there was no evidence concerning the agency's treatment of similarly situated non-whistleblowers, she did not specifically identify whether this factor favored the agency or the appellant. 0042 ID at 27. An agency's failure to produce relevant evidence on *Carr* factor 3 "cannot support the agency." *Smith v. General Services Administration*, 930 F.3d 1359, 1367 (Fed. Cir. 2019). However, we have no reason to believe that the unique circumstances that caused the agency to change the appellant's appointment status and terminate him occurred in other instances. In the complete absence of evidence that similarly situated non-whistleblower comparators exist, the Board has found *Carr* factor 3 to be neutral. *Karnes v. Department of Justice*, 2023 MSPB 12, ¶ 36. We find it appropriate to do the same here. Accordingly, we modify the initial decision to clarify that the absence of evidence on the third *Carr* factor renders that factor neutral. Overall, based on the administrative judge's findings that *Carr* factors 1 and 2 favored the agency and our finding that the absence of evidence regarding *Carr* factor 3 is neutral, we agree with her conclusion that the agency proved by clear and convincing evidence that it would have terminated the appellant absent his whistleblowing disclosures or protected activities. 0042 ID at 21-27; *see Haebe*, 288 F.3d at 1301.

*0056 appeal*

¶21    In addressing whether the agency met its clear and convincing evidence burden in the second appeal, the administrative judge summarized the testimony from the Labor Relations Chief and the Human Resources Specialist explaining why the appellant's appointment type was changed from permanent to temporary. 0056 ID at 19-21.  She also highlighted evidence in the record supporting the decision to re-code the appointment and identified a potential ambiguity in the agency's bylaws concerning how to properly code the appellant's appointment type. *Id.* at 20-21.  However, she did not make a specific finding as to whether the first *Carr* factor weighed in favor of the agency or the appellant.  Regarding the second *Carr* factor, the administrative judge concluded that there was no evidence that the agency officials involved in the decision to change the appellant's appointment type had any motive to retaliate against him. *Id.* at 21.  Finally, regarding the third *Carr* factor, the administrative judge observed that there was no evidence in the record indicating that the agency treated non-whistleblowers more leniently than whistleblowers. *Id.*

¶22    We modify the initial decision to find that the first *Carr* factor favors the agency.  In discussing the strength of the agency's evidence, the administrative judge relied on the testimony from the Labor Relations Chief stating that, at the time she made the change, she was relying on the language in the Personnel Standards and Credentialing Board (PSCB) action stating that the appellant had been recommended for a "temporary appointment."  0056 ID at 20.  The administrative judge acknowledged that the agency's bylaws specified that the agency was ultimately responsible for determining the nature of the appointment, but she also cited testimony from the human resources officials stating that, in determining a physician's appointment type, they relied on the language in the PSCB action.  0056 ID at 20-21; 0042 IAF, Tab 114 at 1021-22 (deposition testimony of the Human Resources Specialist), 821-23 (deposition testimony of

the Labor Relations Chief); HT3 at 322-33, 371 (testimony of the Labor Relations Chief).

¶23 The appellant argues on review that the Labor Relations Chief acknowledged during the hearing that she may have been mistaken about her interpretation of the language in the PCSB action and that the administrative judge erred by failing to consider this testimony. 0056 PFR File, Tab 3 at 19-20. An administrative judge's failure to mention all of the evidence of record does not mean that she did not consider it in reaching her decision. *See Marques v. Department of Health and Human Services*, 22 M.S.P.R. 129, 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table). Additionally, the Labor Relation Chief's acknowledgement that she may have been mistaken about the import of the language in the PCSB action when faced with the conflicting language in the agency's bylaws several years later does not diminish the strength of her stated reason for changing the appointment type at the time she took the action. *See Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1372 (Fed. Cir. 2001) (concluding that in considering the first *Carr* factor, "the Board properly assessed the evidence as it stood at the time of the . . . action . . . in light of what [the agency officials] knew at the time they acted"); *Chambers v. Department of the Interior*, 116 M.S.P.R. 17, ¶ 30 (2011) (applying this principle from *Yunus*).

¶24 In summary, the administrative judge reasonably credited the consistent testimony of the human resources officials involved in changing the appellant's appointment type from permanent to temporary, stating that they believed the change was a necessary result of the PCSB action recommending the appellant for a temporary appointment. The appellant has not provided sufficiently sound reasons to disturb the administrative judge's findings on this point. *See Haebe*, 288 F.3d at 1301. Consequently, the agency's stated reasons for taking the challenged action were strong, and the first *Carr* factor favors the agency.

¶25 Regarding the second *Carr* factor, the appellant argues that the administrative judge erred by concluding that the human resources officials

involved in changing his appointment type did not have any motive to retaliate against him. 0056 PFR File, Tab 3 at 11-13. The appellant notes that, by changing his appointment type, it would be easier for the agency to carry out a retaliatory termination. *Id.* We have considered this argument, but we disagree. If the appellant is correct, he has identified a nonretaliatory reason—the convenience of human resources officials in expediently carrying out the agency's termination decision—for the change in his appointment type. He also argues that the administrative judge misconstrued his arguments concerning the agency's failure to adhere to its Handbook in changing his appointment type as a due process affirmative defense claim instead of properly considering it as evidence of retaliatory motive. 0056 PFR File, Tab 3 at 12. In concluding that none of the human resources officials involved in the appointment type change had a motive to retaliate against the appellant, the administrative judge noted that the appellant's disclosures did not reflect negatively on either official and that there was no evidence in the record indicating that they changed the appellant's appointment type at the behest of any other agency official. 0056 ID at 21.

¶26    In addition to any individual motive to retaliate by the agency officials involved in the challenged personnel action, the analysis of retaliatory motive must account for any institutional motive to retaliate. *Robinson v. Department of Veterans Affairs*, 923 F.3d 1004, 1019-20 (Fed. Cir. 2019) (citing *Miller v. Department of Justice*, 842 F.3d 1252, 1261-62 (Fed. Cir. 2016) (citing *Whitmore v. Department of Labor*, 680 F.3d 1353, 1370 (Fed. Cir. 2012))); *Wilson v. Department of Veterans Affairs*, 2022 MSPB 7, ¶¶ 62-65 (disagreeing with an administrative judge that the agency's motive to retaliate was "not great" when, as relevant here, the appellant's disclosures put agency officials, including the individual who decided to remove him, in a critical light). Considering any potential institutional motive to retaliate does not change the result here. The appellant's protected disclosures and activities primarily concerned his complaints about the actions of the SUNY Chair regarding the hiring of a trauma

specialist from the affiliate institute and concerns about SUNY residents endangering patient safety, none of which implicated agency management officials in the potential wrongdoing. 0042 IAF, Tab 2 at 3, Tab 6 at 1-2, 7, Tab 112 at 55; HT1 at 79-81, 96, 124 (testimony of the appellant). Regarding the appellant's disclosure to the agency's Secretary alleging that the purchase of a $2 million robot "ate up" too much of the agency's equipment budget, there is no evidence in the record that the officials involved in the robot purchase were even aware of the decision to change the appellant's appointment type, much less that they had any influence or involvement in the decision. 0042 IAF, Tab 5 at 3; 0042 IAF, Tab 6 at 2; HT1 at 96 (testimony of the appellant) (discussing his disclosure regarding the robot expenditure). Accordingly, we agree with the administrative judge that there is no evidence of any motive to retaliate against the appellant based on his protected disclosures or activity in connection with the change in his appointment status from temporary to permanent.

¶27    Finally, the appellant argues that, under the third *Carr* factor, the lack of evidence demonstrating that other doctors hired by the agency had the nature of their appointment statuses determined by a PCSB action should have weighed against the agency. 0056 PFR File, Tab 3 at 13-15. As previously noted, the burden rests with the agency to prove by clear and convincing evidence that it would have taken the challenged action absent the whistleblowing activity, and so the agency's failure to produce comparator evidence if it exists "may be at the agency's peril," and "may well cause the agency to fail to prove its case overall." *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 18 (quoting *Whitmore*, 680 F.3d at 1374-75). However, aside from identifying the lack of any evidence pertaining to the third *Carr* factor, the appellant has not identified any potential comparator employees that the agency failed to bring forward or argued that any such comparator employees exist. *See Whitmore*, 680 F.3d at 1374 (noting "to the extent that such evidence exists, . . . the agency is required to come forward with all reasonably pertinent evidence relating to *Carr* factor three"). Accordingly, the

lack of evidence on the third *Carr* factor effectively removes this factor from consideration and renders it neutral. *See Rickel v. Department of the Navy*, 31 F.4th 1358, 1362, 1364-66 (Fed. Cir. 2022) (affirming the Board's determination that the agency proved it would have removed the petitioner absent his whistleblowing disclosures despite the lack of comparator evidence).

¶28 In sum, we modify the initial decision in the 0056 appeal as follows: to clarify that, consistent with the administrative judge's findings, the first *Carr* factor weighs in the agency's favor; agree with the administrative judge's conclusion that the second *Carr* factor also weighs in the agency's favor; and specify that the absence of any evidence pertaining to the third *Carr* factor renders that factor neutral. Based on the foregoing, we agree with the administrative judge that the agency proved by clear and convincing evidence that it would have changed the appellant's appointment type absent his whistleblowing disclosures or protected activities. 0056 ID at 19-21; *see Haebe*, 288 F.3d at 1301. Accordingly, we affirm the initial decisions denying the appellant's requests for corrective action in these joined appeals, as modified herein.

## NOTICE OF APPEAL RIGHTS[4]

The initial decisions, as supplemented by this Final Order, constitute the Board's final decisions in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of

---

[4] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[5]  The court of appeals must <u>receive</u> your

---

[5] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

*Gina K. Grippando*

FOR THE BOARD: _____
Gina K. Grippando
Clerk of the Board

Washington, D.C.